**Frank L. PICKERING, Appellant,**

v.

**DANIEL J. KEATING CO. et al., Appellees.**

**No. 71–1205.**

United States Court of Appeals, Third Circuit.

Submitted Feb. 15, 1972.

Decided May 5, 1972.

Howard J. Creskoff, Freedman, Borowsky & Lorry, Philadelphia, Pa., for appellant.

Harry A. Short, Jr., Liebert, Short, Fitzpatrick & Lavin, Philadelphia, Pa., for appellees.

Before ADAMS, GIBBONS and JAMES ROSEN, Circuit Judges.

## OPINION OF THE COURT

JAMES ROSEN, Circuit Judge.

Appellant Frank L. Pickering appeals from an adverse jury verdict in this federal diversity suit arising out of an alleged assault and battery occurring on May 25, 1962 at Riverside, New Jersey. At the time of the alleged assault Pickering was employed by the Austin Company as a project superintendent. The Austin Company was the general contractor in an enterprise calling for the construction of new facility buildings for the MacMillan Company at Riverside. As project superintendent the plaintiff's duties consisted of supervising the planning, correlating and coordinating of various phases of construction including the work of the sub-contractors. The appellee Daniel J. Keating Co. was the sub-contractor of the Austin Company. Keating's part in the construction work for MacMillan consisted of the installation in its entirety of the fire protection system including both underground pipe lines as well as the sprinkler system within the structure. The two alleged assailants were employees of Daniel J. Keating Co. on the date of the instant occurrence. Pickering testified that the alleged assault took place at the job site at Riverside after the three men ran a test of the equipment installed by Keating's employees in order to duplicate as nearly as possible actual working conditions of the fire apparatus. Pickering also testified that prior to the test he pointed out to Keating's employees that the gauge used to measure the performance of the fire equipment did not appear to be in proper working order, and that he requested a back-up gauge to the one already in the system to check its accuracy. During this conversation the system failed,

and the two employees of Keating allegedly hit Pickering several times with their fists, threw him into a shallow ditch, kicked him and jumped on him.[1] Pickering unsuccessfully attempted to reach his immediate supervisor. He then left the job site and proceeded to a hospital located about 60 or 65 miles from Riverside, arriving just prior to 3:30 that afternoon. Discrepancies appear between the entries made in the hospital record that day and the answers to the interrogatories served upon Pickering's attorney with reference to the injuries sustained and Pickering's statement of the history of those injuries. The hospital record indicates that the plaintiff "fell down into excavation while at work."[2] Pickering explained the absence of any mention in the hospital record of the alleged assault and battery as an attempt to avoid any embarrassment to the parties involved. The hospital record also indicates that the only treatment administered to Pickering on May 25, 1962 was for a periorbital hematoma, i. e. a black eye. The record is devoid of any reference to head injuries, or injuries to the back or chest.[3]

The court instructed the jury that an employer may not be held liable for harm caused by an employee if the employee's act was not done within the scope of employment, even though it may have occurred during the course of employment. Three questions were posed to the jury for their determination:

"First: Did the employees, Harry Fisher and his brother, in fact, commit an assault at all?

Second: Were the employees, Harry Fisher and his brother, acting within the scope of their employment when they committed the alleged assault upon the plaintiff?

Third: If the act of either of these employees was committed for the purpose of accomplishing one of the aims of his job, did he do so wilfully, maliciously, and so excessively that it could be interpreted as being within the scope of his authority?"

The court also said that if the jury found that no assault was committed, or that the employee was outside the scope of his employment, then its verdict would be for the defendant. The jury returned a verdict in favor of Keating.

This appeal challenges the court's charge to the jury on the doctrine of respondeat superior. The plaintiff argues (1) that it was reversible error for the court to charge the jury that in order for the defendant employer to be liable, the employees must have been committing an act as a means of accomplishing the aims of their employment; and (2) that the court's definition of "scope of employment," without attempting to apply the principle involved to the facts of the case, was misleading and prejudicial. Finally, Pickering claims that the

1. Plaintiff sued the individual employees of Keating in the Superior Court, Bergen County, State of New Jersey, prior to bringing this suit in the Federal Court. (Docket #L-23696) It appears from the record that plaintiff agreed to take a voluntary dismissal of that action. (Order dated March 1, 1967), App. 31A. While the complaint in this case names not only the Keating Company but also the individual employees of Keating, plaintiff indicated to the trial judge that he was unable to obtain personal service on the employees, who reside in New Jersey.

In the Bergen County action plaintiff did not in any way indicate at his oral deposition that the test performed on the fire apparatus was unsuccessful. No "hint" is provided in his deposition that a test failure contributed to the ensuing altercation between the plaintiff and the defendant's employees.

2. Appendix 92a.

3. Appendix 93a.

court's refusal to charge the jury on punitive damages was reversible error.

■ We look to the law of New Jersey in measuring the judge's charge against the allegations of error. The ground underlying liability of the master for the negligent act of the servant is that the servant is conducting the master's affairs and that the latter has the right of control with regard thereto, and is bound to see that they are so conducted that others are not injured thereby. "In cases where the servant acts by authorized means, in an authorized manner and in pursuit of his master's business, the master is clearly liable for the acts of the servant. . . . On the contrary, where the act of the servant is unauthorized, expressly or impliedly, or is merely in furtherance of the servant's own purposes, the master is not liable because the act is obviously not within the scope of the employment." Wright v. Globe Porcelain Co., 72 N.J.Super. 414, 418, 179 A.2d 11, 13 (App.Div. 1962).[4]

■■ The scope of authority or employment of an agent or servant is a factual issue for jury determination.[5] We have read the record and conclude that the judge's charge to the jury was proper.[6]

Appellant argues that the modern trend has been to enlarge the employer's responsibility; that traditional tests of liability based on the employee's motive to assist his employer are undermined by the present rationale for vicarious liability; and that the gap between the "scope of employment" rule of respondeat superior and the "arising out of and in the course of employment" test of workmen's compensation is rapidly narrowing.[7] We find no such erosion of the traditional concepts of employer's liability in New Jersey. *Wright, supra.*

■ We summarily dispose of the appellant's remaining arguments. We perceive no prejudice in the trial court's failure to charge the jury on punitive damages as the jury returned a verdict for the appellee on the liability issue.[8] In addition, the record clearly establishes that full, complete and simplified instructions were given by the trial judge and were properly related to the factual issues presented to the jury.

■■ It is axiomatic that the credibility of a witness is a proper matter for jury determination. Pickering's in-court testimony contained numerous discrepancies with prior written and oral statements. The hospital record indicates that Pickering was injured when he fell into a ditch. There is no mention of the alleged assault. Pickering's complaints to the admitting personnel of the hospital on May 25, 1962 bears little resemblance to his list of injuries included in answers to interrogatories in the state court action. Furthermore, his oral deposition in that action does not

4. In Snell v. Murray, 117 N.J.Super. 268, 284 A.2d 381 (Law Div. 1971), a case involving both municipal law and principles of agency, the court stated the law in this fashion:

"If a servant or agent deviates from the business of his master or principal and while in the pursuit of his own ends, commits a tort, the master or principal cannot be held liable for the damage inflicted" (citations omitted).

See also Kimball v. United States, 262 F. Supp. 509, 513 et seq. (D.N.J.1967).

5. Marion v. Public Service Electric & Gas Co., 72 N.J.Super. 146, 157, 178 A.2d 57 (App.Div.1962): cf. Miller v. Stieglitz, 109 N.J.L. 138, 160 A. 543 (E. & A. 1932). The scope of employment or au-

thority is likewise treated as a factual issue under the law of Pennsylvania. See Norton v. Railway Express Agency, 412 F.2d 112 (3d Cir. 1969), and cases cited.

6. Cf. Restatement of Agency, 2d § 228.

7. Cf. Ira S. Bushey & Sons, Inc. v. United States, 276 F.Supp. 518 (E.D.N.Y.1967), aff'd, 398 F.2d 167 (2d Cir. 1968).

8. See Zullo v. Central Railroad Co. of New Jersey, 9 N.J.Super. 49, 74 A.2d 626 (App. Div.1950), where the court found reversible error in the trial court's charge to the jury on punitive damages where no evidence was presented that the employer had ratified or in any way participated in its employee's intentional tort. Cf. Restatement of Agency. 2d § 217(C).

mention the test failure which, according to Pickering's lengthy testimony in the diversity suit, precipitated an argument culminating in the assault and battery. Finally, there were no witnesses to the alleged assault and battery. Pickering's reconstruction of the occurrence was not corroborated by any other testimony. In these circumstances, the jury may well have chosen to discard the proffered evidence and conclude that no assault and battery had in fact occurred. The result reached in the case is consistent with both the factual record and the trial court's instructions on the applicable law.

For the above reasons, the judgment of the District Court will be affirmed.