Brown, Chief Judge, filed a specially concurring opinion.

Gewin, Circuit Judge, filed a specially concurring opinion in which Thornberry, Circuit Judge, joined.

Gee, Circuit Judge, filed a specially concurring opinion.

Wisdom, Circuit Judge, filed an opinion concurring in part and dissenting in part.

Clark, Circuit Judge, dissented and filed opinion in which Goldberg and Godbold, Circuit Judges, joined.

**Henry Lee BRYAN, Plaintiff-Appellee,**

**v.**

**Clarence JONES, Sheriff, Henry Wade, District Attorney, Fidelity & Deposit Co. & Lena Giddens, Defendants-Appellants.**

**No. 74–3435.**

United States Court of Appeals, Fifth Circuit.

April 30, 1976.

Earl Luna, Thomas V. Murto, III, Dallas Tex., for Jones.

Alan Wilson, Dallas, Tex., for Fidelity & Deposit Co.

Gerald Weatherly, Asst. Dist. Atty., Dallas, Tex., for other interested parties.

Douglas R. Larson, Dallas, Tex., for plaintiff-appellee.

Before BROWN, Chief Judge, WISDOM, GEWIN, BELL,* THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, MORGAN,

CLARK, RONEY, GEE and TJOFLAT, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

Henry Lee Bryan brought this § 1983 [1] damage action based on a theory of false imprisonment against Dallas County Sheriff Clarence Jones, Sheriff Jones's surety, Dallas County District Attorney Henry Wade, and Lena Giddens, an employee in the District Attorney's office. Following a jury trial, he was awarded a $40,000 judgment against Sheriff Jones and his surety. Jones appealed, challenging the exclusion of certain evidence relevant to damages and the denial of a proposed jury instruction that would have allowed consideration of a good faith defense. The original panel remanded the case for retrial of the damages issue, but ruled that a good faith defense is not available in a case of this nature, 5th Cir., 519 F.2d 44. We granted an en banc hearing of this case to reconsider the issue of good faith defenses in § 1983 actions based on false imprisonment. Concluding that a defense of reasonable good faith may be raised, we reverse.

### I.

Plaintiff Henry Lee Bryan was arrested on February 7, 1972, in Tampa, Florida, on charges of theft of an automobile in Dallas, Texas. Bryan waived extradition and was brought to the Dallas County jail where he was incarcerated on February 15, 1972. He was held on authority of arrest warrant No. 81932 until he was indicted by the Dallas County Grand Jury on February 14, 1972. The number assigned to the indictment was C–72–1048–J.

In accordance with established procedures, Lena Giddens, an employee in the Dallas County District Attorney's office,

---

\* This opinion was concurred in by Judge Bell prior to his resignation from the court on March 1, 1976.

1. 42 U.S.C. § 1983 provides:

    Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

prepared a weekly list of persons indicted by the grand jury and forwarded it to the jail. The grand jury report of February 14, 1972, listed Henry Lee Bryan with the proper indictment number C–72–1048–J, but showed that indictment to correspond with arrest warrant No. 5772. The listing of that warrant number was a typographical error; it should have appeared with the name of another prisoner, Artie B. Bryant. On the basis of this grand jury report, the jail updated its records for Bryan adding the correct indictment number and the incorrect warrant number to its existing record of the original warrant.

As a result of a polygraph test which verified Bryan's story that he had been hired as a driver and had no idea that the car was stolen, the District Attorney moved to dismiss charges under indictment C–72–1048–J, and the motion was granted on March 3, 1972. The clerk of the criminal district court prepared a "Notice of Disposition of a Felony Case" on that same day, though it is unclear whether it was delivered on that day or on March 13, 1972. In addition, the clerk's office prepared and delivered a release notice on March 6, 1972, based upon issuance of a personal bond.

Despite receiving these notices, the Sheriff did not release Bryan, because the records still indicated that he was being held on authority of warrant number 81932, which had never been properly cross-indexed to indictment C–72–1048–J. Bryan made several inquiries as to why he was still being held, but his efforts did not result in the correction of the records until April 7, 1972, the date of his release.

Bryan brought an action in the Northern District of Texas seeking damages under 42 U.S.C. § 1983 for false imprisonment. The jury rendered a special verdict finding:

(1) Sheriff Jones failed to make a reasonable and timely investigation of his legal authority to imprison Bryan after March 3, 1972.

(2) Lena Giddens was not negligent in the preparation of the grand jury report of February 14, 1972.

(3) The grand jury report of February 14, 1972 was the proximate cause of imprisonment of Bryan after March 3, 1972.

(4) It could reasonably be anticipated by the District Attorney's office that the Sheriff's office would rely on the grand jury report of February 14, 1972, listing the case number and warrant number of the criminal charges pending against the plaintiff Bryan.

(5) The Sheriff's office did rely on that grand jury report.

(6) The District Attorney or his employees were negligent in not advising the Sheriff that he had no authority to detain Bryan after March 3, 1972.

(7) The failure to so advise the Sheriff was the proximate cause of Bryan's imprisonment.

(8) $40,000 would fairly and reasonably compensate Bryan for: (a) physical pain suffered after March 3, (b) mental anguish suffered after March 3, and (c) physical discomfort suffered by the plaintiff while in jail from March 3, 1972, to his release on April 7, 1972.

(9) None of the defendants acted recklessly, or willfully and maliciously, and with a design to oppress and injure Bryan.

The trial court granted judgment on the verdict of $40,000 against Sheriff Clarence Jones, but denied judgment against either District Attorney Henry Wade or against Lena Giddens. Sheriff Jones appealed charging error in failing to instruct the jury that good faith was a defense to the charge of false imprisonment and that it was error for the court to refuse to permit proof of Bryan's prior imprisonment as evidence relevant to the issue of the amount of damages suffered.

## II.

In *Monroe v. Pape,* 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492, 505 (1961), the Supreme Court held that § 1983 "should be read against the background of tort liability that makes a

man responsible for the natural consequences of his actions." The Court elaborated on this in *Pierson v. Ray,* 386 U.S. 547, 556–57, 87 S.Ct. 1213, 1218–1219, 18 L.Ed.2d 288, 295–296 (1967), ruling that the background of tort liability includes, not only the elements of the tort, but also the various common law defenses to tort liability.[2] We must, therefore, evaluate the appropriateness of the proposed instruction in this case in light of the possible relevancy of good faith to establishing either the elements of the underlying tort of false imprisonment or the elements of the affirmative defense of official immunity.

■ Turning first to the elements of a prima facie case, we are confronted by *Whirl v. Kern,* 407 F.2d 781 (5th Cir. 1968), *cert. denied,* 396 U.S. 901, 90 S.Ct. 210, 24 L.Ed.2d 177 (1969), upon which the original panel and the trial court relied. In that case, we surveyed the law of false imprisonment and concluded that intent to imprison *without legal authority* need not be proved as an element of the prima facie case.[3] The elements of the prima facie case are: (1) intent to confine, (2) acts resulting in confinement, and (3) consciousness of the victim of confinement or resulting harm. Restatement, Second, Torts § 35 (1965). Thus, a prima facie case is made out against a jailer even when he believes he has legal authority to detain a prisoner. Accordingly, whatever impact his good faith has, it must be as an element of a defense.

## III.

*Whirl v. Kern* also spoke to the issue of official immunity. Jailers, unlike policemen,[4] were held not to be immune because their jobs are ministerial in nature and do not present the split second decisions of an arresting officer. 407 F.2d at 792. Our subsequent decisions on false imprisonment along with the Supreme Court cases on official immunity, however, cast considerable doubt on the wisdom or continued vitality of that decision.

The Supreme Court held, in *Scheuer v. Rhodes,* 416 U.S. 232, 243, 94 S.Ct. 1683, 1689, 40 L.Ed.2d 90, 100 (1974), that official immunity, in its absolute common law form could not be reconciled with § 1983, which was enacted for the very purpose of creating a cause of action against government officials.[5] Nevertheless, like police officers who can plead good faith and probable cause as a defense to false arrest,[6] other governmental officials cannot function in an atmosphere that holds them liable for merely carrying out their duties. The Court held that

in varying scope, a qualified immunity is available to officers of the executive branch of government, the variation being dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based. It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good-faith belief that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct. 416 U.S. at 247–48, 94 S.Ct. at 1692, 40 L.Ed.2d at 103.

This standard of a qualified good faith immunity was clarified and elaborated upon in *Wood v. Strickland,* 420 U.S.

---

**2.** *See Adickes v. Kress & Co.,* 398 U.S. 144, 231–32, 90 S.Ct. 1598, 1641, 26 L.Ed.2d 142, 196 (1970) (Brennan, J., concurring in part and dissenting in part); *Roberts v. Williams,* 456 F.2d 819, 824 (5th Cir. 1972).

**3.** *See, also,* Restatement, Second, Torts § 44 (1965); Annot., 49 A.L.R.2d 1460 (1956).

**4.** *See Pierson v. Ray,* 386 U.S. 547, 555–57, 87 S.Ct. 1213, 1218–1219, 18 L.Ed.2d 288, 295–296 (1967).

**5.** *Accord Anderson v. Nosser,* 438 F.2d 183, 201 (5th Cir. 1971), *modified* 456 F.2d 835 (1972), *cert. denied,* 409 U.S. 848, 93 S.Ct. 53, 34 L.Ed.2d 89 (1972).

**6.** *Pierson v. Ray,* 386 U.S. 547, 555–57, 87 S.Ct. 1213, 1218–1219, 18 L.Ed.2d 288, 295–296 (1967); *Perry v. Jones,* 506 F.2d 778, 780 (5th Cir. 1974).

308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975),[7] a suit against school administrators and school board members. The Court held that the appropriate standard contains both a subjective element of good faith and an objective element of reasonableness. Consequently, while school officials could not be held responsible for incorrectly predicting the future course of constitutional law, they could not ignore clearly established rights merely by having acted in good faith.

Most recently, in *O'Connor v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975), a case involving alleged deprivation of a mental patient's right to liberty, the Court approved a reasonable good faith instruction given by the trial court, but remanded for further consideration in light of *Wood v. Strickland* as to the appropriateness of an instruction that reliance on state law was reasonable.

■ Since *Whirl v. Kern,* this court has been confronted with several significant false imprisonment cases. Although they pre-date the Supreme Court official immunity cases, the decisions are consistent with the pronouncements of that Court. In *Dowsey v. Wilkins,* 467 F.2d 1022 (5th Cir. 1972) police had detained the plaintiff in the police station for several hours in an attempt to discover through intensive interrogation what drug had rendered his companion unconscious. The police sought to enter a good faith defense based on their motive of saving the companion's life. This court ruled that mere good faith was not enough. Noting that *Pierson v. Ray* allowed a reasonable good faith defense in false arrest cases, we stated that a similar defense would be available in a false imprisonment case unaccompanied by false arrest. This defense, however, is not made out by a mere showing of good intentions; the police must also have a reasonable belief that detention is lawful.

A similar situation was presented in *Johnson v. Greer,* 477 F.2d 101 (5th Cir. 1973), in which the plaintiff sued for false imprisonment in a psychiatric clinic. He was held for five days on the authority of an emergency warrant, which by Texas law is limited in duration to twenty-four hours. The clinic director defended on grounds that he intended to protect the plaintiff and others from possible injury. We denied this defense, citing *Dowsey* for the proposition that mere good intentions do not give rise to a reasonable belief that detention is lawful.

Finally, in *United States ex rel. Bailey v. Askew,* 486 F.2d 134 (1973), we were presented with a § 1983 false imprisonment claim based on a prisoner's claim that his sentence was improper. We held that since the judiciary was immune, it follows that persons who are obliged to carry out judicial orders of commitment are also immune. "[A] jailer cannot be held liable for an error in an order of commitment which is patently proper." *Id.* at 135.

The rule of law to which these cases [8] point—that a defense of official immunity is available to a jailer who has acted in reasonable good faith—is consistent with the Supreme Court pronouncements on official immunity during this period. Attempts by appellee and the original panel to distinguish the Supreme Court cases on grounds that they involved discretionary acts must fail, especially in light of the Supreme Court's decision in *O'Connor v. Donaldson,* a case involving a cause of action that is quite similar to false imprisonment. This is not to say, however, that discretion is irrelevant. To the contrary, we ruled in *Roberts v. Williams,* 456 F.2d 819, 830–31 (5th Cir. 1972), *cert. denied,* 404 U.S. 866, 92 S.Ct. 83, 30 L.Ed.2d 110 (1971), that the degree of discretion is relevant to determining what standard of reasonableness will be used.

---

7. *Accord Roberts v. Williams,* 456 F.2d 819, 831 (5th Cir. 1972).

8. *See, also Donaldson v. O'Connor,* 493 F.2d 507 (5th Cir. 1974), *aff'd,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975); *Burton v. Waller,* 502 F.2d 1261, 1274–75 n. 6A (5th Cir. 1974), *cert. denied,* 420 U.S. 964, 95 S.Ct. 1356, 43 L.Ed.2d 442 (1975).

In a case such as this one, where there is no discretion and relatively little time pressure, the jailer will be held to a high level of reasonableness as to his own actions. If he negligently establishes a record keeping system in which errors of this kind are likely, he will be held liable. But if the errors take place outside of his realm of responsibility, he cannot be found liable because he has acted reasonably and in good faith. Instructions outlining these requirements for a reasonable, good faith defense should have been given in this case, in light of defendant's timely request for such an instruction.

Accordingly, we REVERSE and REMAND for a new trial in light of this opinion.[9]

JOHN R. BROWN, Chief Judge (specially concurring):

I concur fully in the result and in Judge Morgan's opinion for the Court, but I think that a few additional observations are in order.

While I accept the Court's reasoning that the issue is the elements of the defense, not the basic question of liability, I would approach the problem from a different tack. When the Supreme Court in *Monroe v. Pape, supra,* spoke of the application of common-law principles, they did not intend permanently to freeze the concept of immunity, liability or available defenses, to that of existing law, *see Imbler v. Pachtman,* 1976, ——

U.S. ——, ——, 96 S.Ct. 984, 47 L.Ed. 2d 128, 138 [44 U.S.L.W. 4250, at 4254, 1976]; *Wood v. Strickland,* 1975, 420 U.S. 308, 318–21, 95 S.Ct. 992, 999, 43 L.Ed.2d 214, 223–24; *Scheuer v. Rhodes,* 1974, 416 U.S. 232, 239, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90, 98; *Pierson v. Ray,* 1967, 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288, 296.

The principle of the common law system is not that of a static approach looking only to the past. The doctrine of qualified immunity which the Supreme Court has developed and which we find so handy here, is really just the natural development that is basic to a common law country, by which the interpretation and application of a statute or a principle. is modified by experience.

I believe it is experience, not just the fortuitous contemporary development of qualified immunity under § 1983, that should lead us to today's determination that the holding in *Whirl v. Kern,* that there is no defense of good faith in its sweeping literal categorical form cannot stand unmodified.[1]

When we hear the word "Sheriff" we think of a gun-bearing, star-wearing Pat Garrett personally chasing down Billy the Kid. But in the modern metropolitan areas of the Fifth Circuit, which include San Antonio, Houston, Dallas, New Orleans, Birmingham, Jacksonville, Atlanta and Miami, among others, we know that this romantic image is not so. The briefs in this case reveal that the average daily jail population in Dallas

---

**9.** In this opinion we reconsidered only the appropriateness of a good faith defense. Accordingly, the reversal by the original panel on the damages issues is unaffected by this opinion.

**1.** I do not read the Court's opinion as dispensing with all of the wisdom of *Whirl.* The holding in *Whirl,* 407 F.2d at 787, that a showing of improper motive—a conscious intent to confine without legal basis—is not an element of the prima facie case, clearly remains. *Bryan v. Jones, supra,* 519 F.2d at 45. The distinctions in duties and responsibility between a police officer and a sheriff—one reacting instantly on the beat, the other administering a jail—are no less valid. It is also clear that good faith is not equated with mere good intentions. *See Dowsey v. Wilkins, supra* and *Johnson v. Greer, supra.*

I do disagree, of course, with the following:
Failure to know of a court proceeding terminating all charges against one held in custody is not, as a matter of law, adequate legal justification for an unauthorized restraint.
*Whirl v. Kern, supra* at 792, and *Whirl's* categorical rejection of the good faith defense:
We do not find any cases nor are we referred to any by counsel which provide that "good faith" is a defense to an imprisonment that it not only without valid process, but contrary to it. Nor do we believe as a matter of federal policy that such a defense should be available to a jailer in circumstances like those before us.
*Id.*

County is 1500–1600. Nine Criminal Courts and six County Courts with criminal jurisdiction, process the thousands of cases that annually pass through the criminal justice mill.

Judge Bue's celebrated opinion in *Alberti v. Sheriff of Harris County,* S.D. Tex., 1975 [18 Cr.L. 2404, Dec. 12, 1975] (not appealed from) has focused attention on the conditions in the Harris County (Houston) jail which is under the authority of the Sheriff, (formerly Sheriff Kern of *Whirl* fame). Judge Bue ordered sweeping injunctive reforms, on the basis of a record that indicates that administrative, logistical management problems are at the heart of humane, dignified prison detention. The two Harris County jail facilities have an average daily population of 2400—there are 12 Criminal District Courts and 9 County Criminal Courts-at-Law. To man these jail facilities takes over 100 guards and supervisors.

The importance of these figures, joined with the continuing judicial development of qualified official immunity, is that experience takes into account that in today's 220 million population in the United States, 12 million in Texas, law enforcement has a major problem in pure administration. The lone Sheriff of the old West today is an administrator. He may wear cowboy boots and a XXXX Stetson, but whether he likes it or not, performing his public duty makes him an administrator.

When the law subjects persons as individuals to liability there must be some recognition that the Sheriff, the Chief of Police, or whoever, cannot do it all. He or she must have subordinates, who also have subordinates—each must depend on the other. Ascending the hierarchy each must depend on reports from those below.

More than that, the Sheriff in such a major institution must even delegate the operational responsibility for the reception, care and detention of the prisoners, including even the time when they get out of jail. We know that with 1600 prisoners and 15 Courts with criminal jurisdiction, each issuing orders concerning detention and release, the Sheriff of Dallas County cannot possibly do everything. There is not enough time, nor enough physical energy in one man, to make daily personal rounds to each Court, the prosecutor's office, the grand jury and jail cells. He must have helpers and once he has established—which he must—a system which eliminates the hazard of mistakes to the maximum reasonable extent, he must depend on the helpers. The law must in some way take that into account.

Since there is the necessity to delegate power and responsibility for the system to function, the Sheriff must have the right to depend upon the inquiries, judgments and reports and frequently actions of subordinates. That makes it essential that the ultimate administrator be able to establish that he had a reasonable basis for his actions and that he acted in good faith, even in depending upon reports or actions that may turn out to be in error.[2]

I emphasize that this is *reasonable* good faith. Inescapably what is good faith is a question of fact for each case. But there are strong indicators to help the decision-makers. The Court must consider the kind of responsibility of the official, *Scheuer v. Rhodes, supra,* 416 U.S. at 246, 94 S.Ct. at 1691, 40 L.Ed.2d at 102. One of the critical elements is that the official demonstrate that he has employed efficient management principles so as to minimize the chance of error and maximize the likelihood of full

---

**2.** The dissenting opinions express concern that the Court's opinion may be read to absolve the Sheriff if the error was made by another. As I construe the Court's opinion we are not going to exonerate the Sheriff simply because his subordinates did it. This is not a question of respondeat superior. I am assuming that for false imprisonment the man who has command over the body of the prisoner bears the

full responsibility for all of his subordinates' actions or nonactions. But, with respect to the onerous and substantial burdens put on a gaol-keeper and the attendant liability which flows from the nature of his restraint over people, when it comes to testing his liability he has to have good faith immunity. Judge Wisdom and the majority are in agreement with that.

satisfaction of constitutional and statutory obligations.

If the sheriff of a metropolitan jail, such as Dallas County or Harris County, does not set up an adequate system so that on successive layers of responsibility each person knows exactly what has happened to orders of the Court discharging prisoners, he could not possibly prove good faith. On the other hand, if he sets up a system that is reasonably watertight, that makes the functionaries check all sources of possible releases of prisoners, and a system for collecting this information and transferring it to the supervisors, and despite the good system and the conscientious performance of duty on the part of everyone concerned, a mistake occurs, clearly that is enough to allow the trier-of-fact to conclude that the sheriff's continued detention was in good faith.

Courts, and Judges, should know best of all of the problem of crime in this country. The war against it is relentless, and its warriors are largely law enforcement officers, sheriffs, chiefs of police and the like. Apprehension is insufficient if there is no detention. And for those determined to be detained, awaiting trial or after conviction, there must be a detainer. The gaol-keeper plays a vital role in this continual struggle. But we run a great risk that the public will not have responsible, competent gaol-keepers if, because of a mistake of one or more subordinates in the large but indispensable network of helpers, that officer is cast for large damages payable out of his own pocket [3] without the right to persuade the trier that he acted in reasoned good faith.

The law will not require an impossibility and that is what the result would be were we to say that the High Sheriff of Dallas County must go through the jail and personally interview every prisoner or personally inspect all of the papers, including those in the custody of the District Attorney as Prosecutor or the records and judgments in all the criminal courts.

GEWIN, Circuit Judge, with whom THORNBERRY, Circuit Judge, joins, specially concurring:

I concur in the reasoning and the result of the majority en banc opinion with one exception. I do not approve the criticism of our opinion in *Whirl v. Kern,* 407 F.2d 781 (5th Cir. 1968), *cert. denied,* 396 U.S. 901, 90 S.Ct. 210, 24 L.Ed.2d 177 (1969). In my judgment that case is distinguishable, factually, procedurally and substantively from the case *sub judice.*

GEE, Circuit Judge specially concurring:

We here hold that good faith is a defense to § 1983/false imprisonment actions. *Whirl v. Kern* [1] holds that it is not.[2]

I concur generally in the majority opinion, as far as it goes.[3] With deference, I suggest that it should go on and overrule *Whirl v. Kern* rather than leave it, like Marley's Ghost, to materialize from time to time on awkward occasions—present in form but eviscerated.

WISDOM, Circuit Judge (concurring in part and dissenting in part):

I am in substantial agreement with the part of the Court's opinion that ap-

---

**3.** Where the money is to come from is not an easy question considering the Eleventh Amendment, *Gates v. Collier,* 5 Cir., 1975, 522 F.2d 81 (en banc), 1976, 525 F.2d 965 (panel); *Newman v. Alabama,* 5 Cir., 1975, 522 F.2d 71 (en banc), and possible non-liability of subordinate governmental entities for money payments under § 1983. *Muzquiz v. City of San Antonio,* 5 Cir., 1976, 528 F.2d 499 (en banc); *Warner v. Board of Trustees,* 5 Cir., 1976, 528 F.2d 505 (en banc).

**1.** 407 F.2d 781 (5th Cir. 1968).

**2.** As the panel opinion herein recognizes when it refers, for example, to "the *Whirl v. Kern* decision that good faith is not a defense to a § 1983 action for false imprisonment," and again, to "*Whirl's* refusal to recognize the good faith defense to a charge of false imprisonment." 519 F.2d at 45.

**3.** Though I would prefer to await the case of imprisonment caused by the error of a negligently-established record keeping system before deciding it, as the opinion's penultimate paragraph seems to do.

plies the Supreme Court's teachings in *Scheuer v. Rhodes* and *Wood v. Strickland* to the issue of a sheriff's immunity for false imprisonment of a § 1983 plaintiff. The "reasonable good faith" defense was set up in a context of discretionary actions of state officials. Here, the defendant Jones plays a much greater ministerial role. The same defense is available to him, however, because it is basically unfair, as *Scheuer* pointed out, to subject a state official to liability when that official acts reasonably and in good faith. *Whirl v. Kern* had held that a sheriff could be liable even if he was not negligent. To that extent, *Whirl* is modified or overruled by the Court's decision here.

I disagree, however, with part of the Court's opinion and with the result. The last paragraph of the Court's opinion goes much further than is necessary or wise. The Court appears to be attempting to define reasonableness in the context of a sheriff and the individuals in his custody. This attempt is an invitation to trouble. The most significant problem arises in the statement, "But if the errors take place outside of his realm of responsibility, he cannot be found liable because he has acted reasonably and in good faith". This implies that Jones could not be found liable in a new trial, because the error, the preparation of the grand jury report, took place "outside of his realm of responsibility". The question is not, however, where the error took place. The question is whether Jones was negligent in failing to discover the error. If that is not the question, it would be pointless to remand for a new trial on liability. In addition, the Court's statement that the sheriff could be held liable for negligently establishing a record-keeping system should not be interpreted as limiting liability to such negligence. Any negligence proximately causing the illegal detention of an individual would suffice.

I disagree with the result of the Court insofar as it remands for a new trial on liability. Instead, I would affirm the finding of liability in view of the jury's verdict that Sheriff Jones failed "to make a reasonable and timely investigation into the legal authority to imprison [the plaintiff] Bryan after March 3, 1972". Although the trial court did not give the requested instruction on the reasonable good faith defense, and the Court now holds that such an instruction would have been a correct statement of law, it is not necessary to give the defendant another chance at the jury. A jury has found that Jones acted unreasonably. In light of this finding the appellant cannot argue that he was prejudiced by the court's failure to give his proposed instruction. Had the requested instruction been given and had the jury acted consistently with its special verdict, the jury would have found that Jones did not act in "reasonable good faith".

To be sure, there is no explicit instruction as to the meaning of "reasonableness". But reasonableness is basically a jury question; it is a concept that loses meaning when courts try to pin it down. In any event, the jury was instructed that the sheriff's "duty [was] not breached at the moment the prisoner should have been released", that the sheriff "must employ means which are reasonably calculated to discover the legal authority if any to imprison a person", and that the sheriff's duty "cannot be delegated to deputies or to anyone else". No issue has been taken with these instructions. Moreover, Jones's counsel, in his closing argument, stated that the sheriff's duty was not breached until "a reasonable time elapses to give [him] an opportunity to . . . make a reasonable investigation", contended that it was reasonable for Jones to rely on the grand jury report, and urged that Jones could not have checked with the justices of the peace each of the 111 people booked into the jail daily.

In light of the instructions actually given, the arguments of Jones's counsel, and, most importantly, the special verdict, Jones was not prejudiced by the trial court's failure to give the correct instruction. We have, in other cases, relied upon findings by the jury in holding that an erroneous instruction did not

constitute reversible error. *See Hanover Fire Insurance Co. v. Sides,* 5 Cir. 1963, 320 F.2d 437, 444; *cf. Marlowe v. Garden Services, Inc.,* 5 Cir. 1969, 411 F.2d 473. *See also Campbell v. Barnett,* 10 Cir. 1965, 351 F.2d 342; *Pickering v. Daniel J. Keating Co.,* 3 Cir. 1972, 460 F.2d 820, 823. *Bryan v. Jones* fits into this category of cases. The defendant stated a correct proposition of law. The jury, however, found the facts against him, and that finding was not prejudiced by the trial court's failure to give the correct instruction. The Court's decision, then, to remand for a new trial on liability constitutes a decision to reject a jury verdict fully supported by the evidence.

I concur in most of the Court's analysis of the law, but I respectfully dissent as to the result.

CLARK, Circuit Judge, with whom GOLDBERG and GODBOLD, Circuit Judges, join, dissenting:

Until today the narrow rule of *Whirl v. Kern* remained unimpeached by related legal developments in the Supreme Court and this circuit. Yet with the policy reasons undergirding its principles as compelling and persuasive as the most recent Supreme Court reasoning,[1] the majority rejects *Whirl's* precedent and casts it adrift to become a derelict in the law. Today's en banc majority feels it necessary to engraft a "reasonable good faith" defense onto this § 1983 false imprisonment action. This procedure serves only to unsettle settled law and to award the defendant a second trial on the same evidence under a rule of law functionally indistinguishable from that which a properly instructed jury has already applied in this case.

At common law, a jailer's privilege to detain was narrower than that accorded to police officers making an arrest. The policeman could escape liability by asserting that his decision, though mistaken, was made in good faith and with probable cause. *Pierson v. Ray,* 386 U.S.

547, 555, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288, 295 (1967). No comparable immunity has ever been afforded to one acting as a jailer. To avoid liability, he who kept the gaol was required to follow orders strictly and perform his limited non-discretionary duties promptly and carefully. *Whirl v. Kern,* 407 F.2d 781, 791 (5th Cir. 1969).

*Whirl v. Kern* drew heavily upon this common law background. Following the cue of the Supreme Court, we "impressed the common law of torts into the service of the Civil Rights Act" to decide what defenses were available to a jailer in a § 1983 false imprisonment action. 407 F.2d at 791. The process employed was not limited to discovery and automatic application of the prevailing general law view. Rather, to insure that the common law rule continued to make sense and conformed to the purposes of the Civil Rights Act, *Whirl* tested it against our current assessment of the realities of the prisoner-jailer relationship and concluded that there was no present need to refashion the rule. 407 F.2d at 792.

*Whirl* held that neither good intentions nor non-negligent conduct in general could insulate a jailer from liability. 407 F.2d at 790. It recognized, however, that this rather rigid general rule did not translate into strict liability in every instance of an illegal imprisonment. A jailer was protected as to his initial incarceration if he justifiably relied on a warrant of commitment valid on its face. 407 F.2d at 791. Thus, though not *in haec verba, Whirl* stated that a reasonable good-faith belief that confinement is legal constituted a defense. This type of immunity can be aptly termed derivative because it partakes of the absolute immunity accorded to acts and orders issued by judges in their official capacity.

When an initially proper confinement subsequently becomes illegal, *Whirl* defined the liability equation as more complex. Since a jailer is responsible for

---

1. *See Imbler v. Pachtman,* —— U.S. ——, 96 S.Ct. 984, 47 L.Ed.2d 128, 44 U.S.L.W. 4250 (1976).

the timely release of his prisoners, he must continue to ascertain whether his legal authority to hold his charges remains viable. A total failure to make this inquiry or a failure to correctly update records clearly could result in liability. *Whirl* said the inaction of a jailer in this regard did not ripen into tortious conduct, however, until after "a reasonable time for the proper ascertainment of the authority upon which his prisoner is detained" has passed. 407 F.2d at 792. The length of this reasonable grace period could increase or decrease depending on the circumstances of the individual case and the difficulties in transmission of dismissals, discharges, etc. Under *Whirl* it was theoretically possible for the period to be extended indefinitely if no amount of due diligence could correctly ascertain a prisoner's status or uncover mistakes. To this extent, *Whirl* established that a reasonable good faith belief based on unavoidable error would be a shield from liability.

*Whirl* precisely defined and delimited the nature and scope of these "good faith" defenses or privileges. It discarded amorphous terms such as "good faith" and "non-negligence" in favor of particularized rules designed to mesh more neatly into the intentional tort framework and to let the jailer know his rights and obligations in terms of his job functions. *Whirl* not only provided doctrinal cleanliness, but its narrow privileges were also the most appropriate response to the jailer's predicament and were tailored precisely to fit the prisoner-jailer context.

The Supreme Court has not yet ruled on the scope of a jailer's immunity in a § 1983 false imprisonment case. I respectfully differ with the majority's assertion that its recent pronouncements on official immunity in other contexts have eroded the holding of *Whirl* in any way. Neither *Scheuer* nor *Wood* attempted to articulate a wholesale official immunity for all state executive officers. In the recent case of *Imbler v. Pachtman*, —— U.S. ——, 96 S.Ct. 984, 47 L.Ed.2d 128, 44 U.S.L.W. 4250 (1976) the Court again flatly rejected the argument that all state executive officials possess the same kind of qualified immunity:

> [O]ur earlier decisions on § 1983 immunities were not products of judicial fiat that officials in different branches of government are differently amenable to suit under § 1983. Rather, each was predicated upon a considered inquiry into the immunity historically accorded the relevant official at common law and the interests behind it.

*Id.* at ——, 96 S.Ct. at 990, 47 L.Ed.2d at 138, 44 U.S.L.W. at 4254.

Two considerations emerge from these decisions which are pertinent to today's case. First, consistent with *Pierson,* the Court continues to regard the common law as the proper authority for determining the defenses available to particular state officials in parallel § 1983 actions. *Wood v. Strickland,* 420 U.S. 308, 318, 95 S.Ct. 992, 999, 43 L.Ed.2d 214, 223 (1975); *Scheuer v. Rhodes,* 416 U.S. 232, 242, 94 S.Ct. 1683, 1689, 40 L.Ed.2d 90, 99 (1974). While refusing to treat common law tradition as an infallible guide, the Court has not abandoned its habit of consulting factually similar common law cases in its search for the appropriate rule. See Theis, *"Good Faith" as a Defense to Suits for Police Deprivations of Individual Rights,* 59 Minn.L. Rev. 991, 1017 (1975). Second, when necessary, the Court is willing to mold the federal immunity or defense to avoid "discouraging effective official action by public officers charged with a considerable range of responsibility and discretion." 420 U.S. at 317, 95 S.Ct. at 998–99, 43 L.Ed.2d at 222. The emphasis is on providing a workable federal remedy without deterring the ability of "government to govern." 416 U.S. at 242, 94 S.Ct. at 1689, 40 L.Ed.2d at 99. *Whirl's* notes harmonize with both of these themes.

As the majority readily acknowledges, a jailer's tasks are essentially ministerial and do not call for on-the-spot decision-making. This official does not need the leeway of the policeman who must make a quick, stressful choice between several options. For this reason, I fail to see

how the short "good faith" defense discussion in *O'Connor v. Donaldson* adds or subtracts anything from *Whirl*. The hospital administrator sued in *O'Connor* was armed with the power to decide which mentally ill patients should be released from a state facility. Like the military officials and school administrators in *Scheuer* and *Wood,* O'Connor was often required to make subtle and difficult choices to successfully function in his job. Surely the mere fact that both cases involved false imprisonment claims is not enough to warrant supplanting *Whirl's* narrow privilege rules with the broad formulation of "good faith" immunity outlined in *O'Connor.*

The post-*Whirl* decisions of this court provide even less assistance to the majority in its determination to cast *Whirl* into limbo. The defendants in *Dowsey* and *Johnson* attempted to assert "defenses" which were nothing more than excuses based on good intentions or nonmalicious motives. Consistent with the prescriptions of *Whirl,* rather than contrary to it, I wrote for the court that such subjective "good intentions" claims were not recognized as defenses under the Civil Rights Act. The language in both opinions implying that these defendants, neither of whom acted purely as a jailer, might have succeeded if only their beliefs had been more objectively reasonable was unnecessary to either decision. More importantly, it was never intended to modify the exhaustive analysis made by *Whirl* of the law applicable to a jailer who failed to release his prisoner when legal restraint authority expired.

In Bryan's case, the factfinders sifted the evidence concerning the erroneous grand jury report, the arrest warrants, indictments, etc., and concluded that Sheriff "Jones failed to make a *reasonable* and timely investigation into the legal authority to imprison [the plaintiff] Bryan after March 3, 1972." (Emphasis added.) They did so under the specific guidelines of *Whirl* which provided a comprehensible framework for the jury's decision. The majority now undoes this verdict and remands for a new trial with

unspecified instructions concerning the availability of a reasonable good-faith defense and indicates that the jailer-sheriff must be exonerated if the "errors took place outside his realm of responsibility."

The problem with this approach is that one jury has already decided that Sheriff Jones failed to carry out his legal responsibility by neglecting to conduct a reasonable, timely investigation into his authority to hold his protesting prisoner after March 3. Today the court destroys this verdict and permits Sheriff Jones to ask a second jury if they view his unreasonable, untimely failure to carry out his plain and clear duty to look to his own records as reasonable good faith action— two conditions that cannot co-exist. Thus, I view the net effect of today's decision as twofold: (1) it gives the defendant jailer an unwarranted new trial on liability rather than damages alone; although this is undesirable, the real harm is (2) the injection of an unnecessary element of confusion into the § 1983 law governing the responsibility of jailers.

I respectfully dissent.