**Cyril James WILLIAMS, Plaintiff,**

v.

**Jack HEARD, Defendant.**

**Civ. A. No. H–80–2446.**

United States District Court,
S. D. Texas,
Houston Division.

March 8, 1982.

---

11. The Flushing line runs for 9.43 transit route miles. *See* note 4, *supra*.

Jacqueline Lee Taylor, Edwards & Hitt, Houston, Tex., for plaintiff.

Donald W. Jackson, Asst. County Atty., Houston, Tex., for defendant.

## MEMORANDUM AND ORDER DIRECTING VERDICT FOR PLAINTIFF

SINGLETON, Chief Judge.

The most important document affecting prisoners that a jailor handles is one relating to a prisoner's release. Such a document, determinative of a prisoner's liberty from the penal system, is at issue in this case. It is a grand jury "no-bill"—a direction to the jailor that demands that a prisoner be released when the grand jury fails to find a bill of indictment against a prisoner for the offense with which the prisoner is charged.[1]

This case involves the failure of the Sheriff of Harris County, defendant in this action, to release plaintiff from prison after he was no-billed by the grand jury. Trial was held before a jury. This Court directed a verdict for plaintiff on the issue of defendant's liability. The only issue submitted to the jury was that of damages, which the jury returned in favor of plaintiff. The facts set out in this Memorandum and Order were developed through testimony at trial.

The plaintiff, Cyril James Williams, was arrested on June 9, 1979, for aggravated robbery and was placed in the county jail under the custody and control of the defendant, Sheriff Jack Heard. The grand jury no-billed Mr. Williams on June 15, 1979. Mr. Williams, however, was not set free at the time of the no-bill. He remained in jail for another four days until it came to the court's attention on June 19, 1979 that Mr. Williams was being held without any authority.

Mr. Williams brought this action against Sheriff Heard under 42 U.S.C. § 1983 for damages resulting from the alleged deprivation of his constitutional rights. A finding of defendant's liability under section 1983 turns on the resolution of three issues: 1) whether the defendant can be held liable for the acts of his agents under section 1983; 2) whether there has been a deprivation of liberty without due process; and 3) whether the defense of qualified immunity based on defendant's good faith is available to the defendant. Because this Court is of the opinion, for reasons to be discussed in detail below, that reasonable minds could not differ as to the resolution of these issues, this Court directed a verdict in favor of plaintiff, pursuant to rule 50 of the Federal Rules of Civil Procedure.

I

In Harris County, after being signed by the foreman of the grand jury, a no-bill is forwarded to the clerk of the state civil and criminal district courts. The clerk's office is located in the civil courts building. From the clerk's office, the document is sent to the criminal courts building, where the jail is housed. At the criminal courts building, the no-bill is coded, microfilmed, and entered into the computer. The original document is then taken to the central jail records office, which is in the same building, along with a list of all documents that are being delivered at that time. The deputy sheriff in the central jail records office then checks each document against the list of documents to ensure that all records on the list are in fact being received by the central office.

All of the documents relating to the release of prisoners, such as the no-bill in this case, are separated so that they can be processed immediately. This group of documents is then divided into two sets—those that concern prisoners in the downtown facility in Houston and those that concern prisoners in the detention center facility in Humble, Texas. The latter group of documents is duplicated and the copies are sent

---

1. A copy of the no-bill involved in this case is appended to this Order.

to the Humble facility. The originals are kept in the central records office.

At the central records office, the information on the documents is copied onto each of the prisoner's jail cards. Once a no-bill is entered onto a jail card, it is given to a releasing deputy who is responsible for releasing the prisoner, after it is determined that there are no other court orders holding the prisoner. If the prisoner is at the downtown facility, the prisoner is released at this time. If the prisoner is housed at the detention center, the prisoner is released when the central jail calls the detention facility ordering them to release the prisoner. Although copies of the no-bills and other documents are sent to the detention center, as stated above, the officers there cannot act on the copies alone because they have no way of knowing whether there are any additional orders requiring that the prisoner be held. Thus, they must act only on a call from the central records office. There are no deputies on duty during the weekend to review the copies of the documents sent by the central jail facility, nor is there a procedure by which receipt of such documents should trigger an inquiry to the central jail facility when the central jail facility has not called to release the prisoner. If an officer at the detention center questions whether a prisoner is lawfully being held, that officer is to contact the central jail records office. The document that is determinative of the prisoner's status is his jail card, and any information on this card will be provided to the officer who inquires.

In this case, the no-bill was filed with the clerk's office at 3:19 p.m. on Friday, June 15, 1979. It was processed that afternoon and was sent to the central jail records office at approximately 6:00 p.m. At this point, the no-bill should have been entered onto plaintiff's jail card, and an order should have been issued to a releasing officer to have him released from the downtown facility where he was located. Due to an error of a deputy sheriff, however, plaintiff was not released. Although plaintiff was at the downtown facility at the time of his no-bill, the no-bill was sent out to the

detention center. Not only was a *copy* of the no-bill sent to the detention center, which would be the practice if the prisoner was in fact being housed there, but the *original* of the no-bill was also sent there because the deputy sheriff failed to separate the two documents. The no-bill was never entered onto plaintiff's jail card at the central records office, as is the normal practice. Therefore, notice of the no-bill was never given to the releasing deputy and plaintiff was not released.

The night of June 15, 1979 plaintiff was transferred to the Humble detention center. He testified that he was aware that he was no-billed by the grand jury and did not understand why he was not released. On Monday, June 18, he asked a prison guard to check to see whether there had been a mistake concerning his release. He further testified that the guard contacted the central jail records office and later told plaintiff that they had no record of plaintiff's no-bill. Plaintiff remained in the detention center until Tuesday, June 19, 1979.

## II

██ Following the Supreme Court's decision in *Monell v. Department of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Fifth Circuit has specifically held that a sheriff cannot be held liable for the unlawful actions of his deputies in a section 1983 action on the basis of vicarious liability. *Baskin v. Parker*, 602 F.2d 1205 (5th Cir. 1979) (on rehearing). In order to find liability under section 1983, the sheriff must be personally involved in the acts causing the deprivation of plaintiff's constitutional rights or there must be a causal connection between an act of the sheriff and the constitutional violation. *Douthit v. Jones*, 641 F.2d 345 (5th Cir. 1981) (on rehearing) (citing *Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120 (5th Cir. 1980); *Henzel v. Gerstein*, 608 F.2d 654 (5th Cir. 1979)). As noted by the Fifth Circuit in *Douthit v. Jones*, 641 F.2d 345 (5th Cir. 1981), such a causal connection may be established where the sheriff

breached a duty imposed by state law and this breach caused the constitutional tort. *Id.* at 346 (citing *Sims v. Adams*, 537 F.2d 829 (5th Cir. 1976)).

With this background, the Fifth Circuit in *Douthit* noted that the state law in Texas imposes a duty upon the sheriff to incarcerate only those persons whom he has lawful authority to imprison. 641 F.2d at 346. Specifically, this statute provides that:

(a) Each sheriff is the keeper of the jail of his county. He shall safely keep therein all prisoners committed thereto by lawful authority, subject to the order of the proper court, and shall be responsible for the safekeeping of such prisoners.

(b) The sheriff may appoint a jailer to take charge of the jail, and supply the wants of those therein confined; but in all cases the sheriff shall exercise a supervision and control over the jail.

Vernon's Ann.Tex.Civ.St. art. 5116. The court in *Douthit* determined that this statutory duty to incarcerate only those persons whom the sheriff has lawful authority to imprison may be satisfied by the sheriff if he adopts reasonable internal procedures to ensure that only those persons are incarcerated for whom he, or the deputy to whom he delegates such responsibilities, has a good faith belief based upon objective circumstances that he possess valid legal authority to imprison. 641 F.2d at 346–47.

Therefore, in the present case, the defendant sheriff will be liable for the actions of his deputies if it is found that he failed to adopt reasonable internal procedures to ensure that the only persons incarcerated are those persons for whom his deputies have a good faith belief based upon objective circumstances that they possess valid legal authority to imprison. As is clear from the evidence, the defendant in this case failed to adopt such procedures. There was no procedure for ensuring that the orders for a prisoner's release that were sent to the central jail records office were ever entered onto a prisoner's jail card, which document is determinative of a prisoner's status in Harris County jail. Fur-

thermore, if such an order were inadvertently placed in the wrong stack at the central jail records office or lost completely, there is no procedure by which such an error could be remedied. As previously stated, an officer questioning the authority under which a prisoner is being held will contact the records office and will receive the information contained on that prisoner's jail card. If the jail card did not contain the information, then there is no other system designed to find the information. Although there was some testimony that the same information is entered into the computer system, there appears to be no established procedure to use the computer system as a means of verifying the information that is required to be copied onto the jail cards or ensuring that such information is in fact on the jail card. Thus, in this case, when the prison guard contacted the central jail records office on Monday, June 18, to determine whether plaintiff in fact had been no-billed, there was no record of the no-bill on plaintiff's jail card.

Reasonable internal procedures would have included a system that would afford priority treatment to releasing papers at both facilities, such as, for example, color coding the releasing papers so that they are not inadvertently placed with non-priority papers. Further, there should have been a system for ensuring the release of prisoners pursuant to the releasing papers, along with a reliable procedure for verifying the orders to release and the fact of the actual release.

### III

The second issue that is raised in this case is whether there has been a deprivation of liberty without due process, as is necessary to establish plaintiff's case under section 1983. This court is of the opinion that there has been such a deprivation here and that reasonable minds could not differ.

There are two elements necessary to establish a cause of action under section 1983: 1) deprivation of a right secured by the Constitution or federal law, and 2) deprivation caused by one acting under the color of

state law. Since there is no question here as to whether the sheriff was acting under the color of state law, the only issue that needs to be addressed is whether the plaintiff was deprived a right secured by the Constitution.

■ The elements of a false imprisonment case under section 1983 that are needed to establish a prima facie case, as set out by the Fifth Circuit in *Whirl v. Kern*, 407 F.2d 781 (5th Cir. 1968) and *Bryan v. Jones*, 530 F.2d 1210 (5th Cir.) (en banc), *cert. denied*, 429 U.S. 865, 97 S.Ct. 174, 50 L.Ed.2d 145 (1976), are: 1) intent to confine, 2) acts resulting in confinement, and 3) consciousness of the victim of confinement or resulting harm. Under *Whirl* and *Bryan*, if these three elements are established, a prima facie case is made out against a jailor even if he believes he has legal authority to detain a prisoner.

Since the *Whirl* and *Bryan* opinions, however, the Supreme Court has held in *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), that a section 1983 false imprisonment action cannot be analyzed only in terms of traditional tort-law concepts. The Court stated that although the three prong test of false imprisonment may constitute a "deprivation of liberty," it does not necessarily amount to a constitutional violation. The Court explained that:

> Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort-law principles. [F]alse imprisonment does not become a violation of the Fourteenth Amendment merely because the defendant is a state official.

*Id.* at 146, 99 S.Ct. at 2695. In the Court's words, "[t]he Fourteenth Amendment does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished 'without due process of law'." *Id.* at 145, 99 S.Ct. at 2695.

Thus, the *Baker* opinion requires that in a false imprisonment case, a cause of action will lie under section 1983 only if there is a deprivation of liberty (as evidenced by the three prong test of false imprisonment under traditional tort law) *without due process of law*. In *Baker*, the Supreme Court determined that, although there was a deprivation of plaintiff's liberty in that he was incarcerated due to a mistaken identity, it was not without due process because it was pursuant to a warrant conforming to the requirements of the fourth amendment. Thus, the sheriff had sufficient probable cause to hold the plaintiff until trial. Further, the Court noted that the right to a speedy trial provides adequate assurance against unconstitutional detentions so long as the initial arrest is valid.

■ In the present case, the elements of a traditional tort-law false imprisonment case having been met, the inquiry is whether deprivation of plaintiff's liberty was without due process of law. It is agreed by all parties that the initial arrest was constitutional. Any right to hold the plaintiff, however, terminated upon the return of the no-bill by the grand jury. Following the no-bill, the failure of the sheriff to release the plaintiff constituted a deprivation of liberty without due process of law, since he was held without warrant or court order.

### IV

■ The final issue to be resolved in this case is whether the defense of good-faith is available to defendant. In *Bryan v. Jones*, 530 F.2d 1210 (5th Cir.) (en banc), *cert. denied*, 429 U.S. 865, 97 S.Ct. 174, 50 L.Ed.2d 145 (1976), the Fifth Circuit held that a reasonable good faith defense is available in cases involving false imprisonment. This holding had the effect of reversing that portion of the Fifth Circuit's opinion in *Whirl v. Kern*, 407 F.2d 781 (5th Cir. 1968), which held that good faith is not a defense to an action for false imprisonment brought under section 1983.

In reaching its holding, the court relied on the Supreme Court's opinion in *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974):

> [I]n varying scope, a qualified immunity is available to officers of the executive branch of government, the variation being dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based. It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good-faith belief that affords a basis for qualified immunity of executive officers from acts performed in the course of official conduct.

*Id.* at 247–48, 94 S.Ct. at 1692. Thus, there are two components to this qualified immunity defense: The first is subjective, that is, the defendant must have acted in good faith. The second is objective, that is, the defendant's actions must be reasonable. If either prong is not met, the defense of qualified immunity is not available.

In a recent Fifth Circuit opinion, *Fowler v. Cross*, 635 F.2d 476 (5th Cir. Jan. 27, 1981), the court discussed the scope of the two prong defense of qualified immunity based on good faith. In *Fowler*, the plaintiff had remained in custody for approximately 50 days beyond the date set for a hearing without having been accorded a preliminary parole revocation hearing. That there was a constitutional violation involved was conceded; thus, the only issue before the court on appeal concerned the district court's finding that the state defendants were entitled to a qualified immunity on the basis of good faith.

With respect to the first prong of the qualified immunity defense, the requirement that defendants have acted in good faith, the court noted that the defense is not available where the official acts with malicious intent to cause a deprivation of constitutional rights or other injury to the plaintiff. With respect to the second prong,

the reasonableness requirement, the court stated that qualified immunity defense is not available where the constitutional right infringed by defendants was clearly established at the time of their challenged conduct, if they knew or should have known of that right, and if they knew or should have known that their conduct violated constitutional norm.

Applying this to the facts of the case, the Fifth Circuit held that the lower court's finding of qualified immunity was clearly erroneous because the defendant's actions were not reasonable. The court determined that the right to a hearing was clearly established at the time of plaintiff's arrest, the defendants knew or should have known about that right, and defendants knew or should have known that their conduct in failing to afford the plaintiff a preliminary parole revocation hearing violated constitutional norms.

■ The actions of defendant in this case, like the defendant's actions in *Fowler*, were not reasonable. The right of a prisoner not to be held after the prisoner has been no-billed by the grand jury and the grand jury has ordered that the sheriff release the prisoner, where there is no other authority under which the prisoner is being held, is a clearly established constitutional right not to be deprived of liberty without due process of law. Furthermore, defendant knew or should have known that this was a constitutional right and that the conduct at issue in this case violated constitutional norms. Knowing of the constitutional rights at stake, defendant, as a jailor, should have established reasonable procedures to account for prisoners held at both the downtown jail and the detention facility in Humble. As previously stated these procedures should have included a system that would afford priority treatment to releasing papers at both facilities, a system for ensuring the release of prisoners pursuant to the releasing papers, and a reliable system for verifying the orders to release as well as the actual release. In light of the

**1160**

clearly established constitutional right at issue of which defendant should have been aware, defendant's actions were unreasonable because he failed to establish reasonable procedures for the release of prisoners such as plaintiff.

In summary, this Court has determined that, in this case, defendant sheriff is liable for the failure of his agents to release the plaintiff; the failure to release plaintiff amounted to a deprivation of plaintiff's liberty without due process of law; and, defendant sheriff is not immune from liability on the basis of his good faith since his actions were not reasonable. This Court is of the opinion that reasonable minds could not differ with these conclusions. It is therefore

ORDERED, ADJUDGED, and DECREED that verdict be, and the same hereby is DIRECTED for the plaintiff on the issue of defendant's liability.

## APPENDIX

297835  228th

No._____

THE STATE OF TEXAS
vs.

*Cyril James Williams*

HARRIS COUNTY

_, A. D. 19_79_

To Hon._**FRANK C. PRICE**_____Judge of said court:

The Grand Jury having investigated the case against_____

_Cyril James Williams_____wherein he is charged with the offense of

_Agg Robbery_____

and have failed to find a bill of indictment against him, and now ask your honor to have him discharged from custody.

_John H. Moore, Jr._
Foreman of the Grand Jury.

To the Sheriff of Harris County:
You are hereby commanded to discharge the said

_Cyril James Williams_

_____
Judge.

FILED
RAY HARDY DIST. CLERK
HARRIS COUNTY, TEXAS

1979 JUN 15 PH 3: 19

BY_____
DEPUTY

8AK 88114160BN
8AK 88114180BN

Vol_41_Page_236_AX GM     F1422 0770

DEFENDANT'S EXHIBIT
3
CA 80-2146