**Calvin JONES, Plaintiff,**

v.

**Ralph LOPEZ and Chauncey Spencer, Defendants.**

**No. CIV.A.SA–00–CA1123FB.**

United States District Court,
W.D. Texas,
San Antonio Division.

Aug. 31, 2001.

Allen F. Cazier, Attorney at Law, Barry Snell, Bayne, Snell & Krause, David C. "Clay" Snell, Bayne, Snell & Krause, San Antonio, for Calvin Jones, plaintiff.

Leslie J.A. Sachanowicz, Bexar County District Attorney, Civil Section, San Antonio, for Ralph Lopez, Chauncey Spencer, defendants.

## ORDER CONCERNING PENDING MOTIONS

BIERY, District Judge.

Before the Court are the following motions: (1) Motion to Join in Notice of Removal; (2) Motion to Dismiss/Motion for Summary Judgment; (3) Motion for Protective Order; (4) Supplemental Motion to Dismiss and/or Motion for Summary Judgment; (5) Motion for Leave to File Plaintiff's First Amended Complaint; (6) Motion to Compel and/or Motion for Leave, and (7) Plaintiff's Unopposed Motion to Supplement the Summary Judgment Record. After thorough consideration of the pleadings and authorities, the Court makes the following rulings.

### Motion to Join in Notice of Removal

In this motion, defendant Chauncey Spencer seeks to join in the Notice of Removal filed by the defendant Ralph Lopez to remove this action to this Court. No opposition to the motion has been received. Accordingly, IT IS HEREBY ORDERED that the Motion to Join in Notice of Removal (docket # 2) is GRANTED.

### Plaintiff's Unopposed Motion to Supplement the Summary Judgment Record

Because the defendants have filed a motion for summary judgment in which they raise the defenses of sovereign immunity and qualified immunity, plaintiff believes it necessary to supplement the summary judgment proof to include certified copies of the order which initially sentenced plaintiff to jail for 30 days and the order signed by Judge Littlejohn which released plaintiff after 9 months of confinement. Defendants have no opposition to the supplement. Accordingly, IT IS HEREBY ORDERED that Plaintiff's Unopposed Motion to Supplement the Summary Judgment Record (docket # 23) is GRANTED, and these documents will be made a part of the record in this case.

### Plaintiff's Motion for Leave to File Plaintiff's First Amended Complaint

Although plaintiff believes his original petition filed in state court is sufficient to overcome defendants' later assertion of qualified immunity, out of an abundance of caution, plaintiff seeks leave to file his first amended complaint which he contends addresses the concerns raised in defendants' motion for summary judgment. Plaintiff points out that defendants oppose the motion for leave to amend even though they specifically requested in their motion for protective order that plaintiff be required to plead his cause of action with more specificity, and defendants amended their pleading without first conferring with plaintiff's counsel or seeking leave of court as required by Federal Rule of Civil Procedure 15(a). In response, defendants contend this Court can conclude the proposed amendment would be futile on the grounds that "119 days have passed since the filing of Defendant's [sic] motion to

dismiss; Plaintiff's amended complaint is almost identical to the original complaint with the exception of paragraph 10; Plaintiff still fails to identify any acts or facts of personal involvement by Defendants Lopez and Spencer; and the causes of action are identical."

■ Ordinarily in a section 1983 action, a plaintiff is required to identify acts or facts of personal involvement in order to hold a sheriff or deputy personally liable. However, in this case, plaintiff is seeking to hold both defendants personally liable based on the breach of a statutorily imposed non-delegable duty and have presented case law in support of this assertion. Because FED. R. CIV. P. 15(a) provides that leave to amend should be "freely given when justice so requires," the Court finds the motion should be granted. Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion for Leave to File Plaintiff's First Amended Complaint (docket #17) is GRANTED and the Clerk is ordered to file Plaintiff's First Amended Complaint attached to the motion as Exhibit A. Having granted leave to file the amended complaint, the Court will consider the remainder of the pending motions based on this amended pleading.

*Defendants' Motion to Dismiss/Motion for Summary Judgment or, in the Alternative Motion for More Definite Statement*

In this pleading, defendants contend plaintiff's complaint should be dismissed for failure to state a claim upon which relief can be granted pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure because there is no genuine issue of material fact, and defendants are entitled to a judgment that plaintiff take nothing by his action as a matter of law. In support of this request, defendants reference the fact plaintiff filed his original petition with the Bexar County District Court.

In the section of this motion following the heading "Motion for Summary Judgment," defendants discuss the two avenues open to the plaintiff for establishing liability against a city, county, or local governmental entity. Because plaintiff failed to provide evidence of any illegal existing policy or custom, defendants ask that all claims against them be dismissed. Defendants also assert that sovereign immunity bars plaintiff's negligence and intentional tort claims, and Texas does not recognize a common law cause of action for violation of the Texas Constitution.

Defendants also assert that because plaintiff failed to allege any custom, policy, or practice, defendants assume plaintiff is seeking to hold Bexar County liable under the theory of respondeat superior or vicarious liability. However, in order for a supervisory official to be held liable, plaintiff must establish either that the supervisory official was personally involved in the acts causing the deprivation of constitutional rights or that a causal connection exists between an act of the official and the alleged constitutional violation. Defendants maintain the plaintiff has failed to establish the defendants were personally or directly involved in any acts that allegedly caused the deprivation of plaintiff's constitutional rights or that a causal connection exists between any act of the defendants and any alleged constitutional violation. In the alternative, defendants include a motion for more definite statement complaining the plaintiff's complaint is so vague and ambiguous that defendants cannot be reasonably required to frame a responsive pleading, and plaintiff has failed to fully describe the exact extent or existence of any alleged injury to plaintiff or what damages he suffered.

In response, plaintiff contends defendants' arguments concerning his failure to establish liability against the county have no merit because plaintiff is not suing the county but has sued two individuals, the Bexar County Sheriff and the former Bexar County Jail Administrator for violating duties statutorily imposed upon them. Plaintiff contends the defendants violated their duties by allowing him to remain in jail nine months beyond the 30–day maximum imposed by Judge Littlejohn. Consequently, plaintiff claims the defendants are liable for false imprisonment for failing to ascertain the authority upon which he was being held and that is why plaintiff has chosen to sue the defendants individually and not Bexar County. Likewise, because plaintiff has not brought this case against the sovereign, defendants' contention plaintiff's claims for negligence and intentional torts are barred by sovereign immunity also fail as does the argument that Bexar County cannot be held liable under a respondeat superior or vicarious liability theory.

▆▆▆▆ Plaintiff argues that although he is not holding Bexar County liable under a respondeat superior or vicarious liability theory, he is seeking to hold the named defendants liable for the acts of their subordinates. Both parties agree that in order for a supervisory official to be held liable in this case, the plaintiff must establish that a causal connection exists between an act of the official and the alleged constitutional violation. As set forth in *Lozano v. Smith,* 718 F.2d 756, 768 (5th Cir.1983), cited by both parties, a "causal connection may be established, for section 1983 purposes, where the constitutional de-

privation and practices occur as a result of the implementation of the sheriff's affirmative wrongful policies by his subordinates, or where the sheriff wrongfully breaches an affirmative duty specially imposed upon him by state law, and as a result thereof, the complained of constitutional tort occurs." Defendants maintain plaintiff has failed to establish and has failed to plead any facts which indicate defendants were personally or directly involved in any acts that allegedly caused the deprivation of plaintiff's constitutional rights. Defendants further argue plaintiff has not made a claim that the alleged incident resulted from the implementation of any affirmative wrongful policies or customs of Bexar County or was caused by a breach of an affirmative statutory duty. Defendants complain plaintiff has not pleaded any facts showing the existence of a causal connection between any acts of the defendants and any alleged constitutional violation. Plaintiff maintains he has alleged a breach of a specific affirmative statutory duty. Moreover, plaintiff argues defendants' motion to dismiss for failure to state a claim pursuant to rule 12(b)(6) is untimely because it was filed after defendants filed their answer.[1]

### *Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(6)*

In Plaintiff's Reply to Defendants' Response to Plaintiff's Reply to Defendants' Motion to Dismiss (docket # 7), plaintiff argues that to the extent defendants' motion is considered to be a motion to dismiss pursuant to rule 12(b)(6), it should be dismissed as untimely because it was filed after defendants filed their answer. Al-

---

1. With respect to defendants' alternative motion for more definite statement, plaintiff contends the motion should be denied because rule 12(e) of the Federal Rules of Civil Procedure provides that a party may move for a more definite statement before filing a re-

sponsive pleading, and defendants filed an answer one week before filing this motion. The Court agrees with plaintiff's analysis and hereby DENIES the alternative motion for more definite statement (docket # 3).

though plaintiff is correct in his assertion that the motion is untimely, courts which have considered this same issue have not dismissed the motion but have considered it a rule 12(c) motion for judgment on the pleadings. The explanation for this transformation is as follows:

"Technically, a 'post-answer Rule 12(b)(6) motion is untimely and some other vehicle, such as a motion for judgment on the pleadings or for summary judgment, must be used to challenge the failure to state a claim for relief.'" However, courts do not mechanically or routinely deny any motion made after a responsive pleading as untimely. If the defendant has previously included in the answer the defense raised in the motion, thereby giving notice, then courts generally allow Rule 12(b)(6) motions filed after the answer. In this context, the Rule 12(b)(6) motion becomes tantamount to a preliminary hearing under Rule 12(d). The courts consider Rule 12(b)(6) motions to dismiss filed after a responsive pleading, not as a Rule 12(b) motion, but as a Rule 12(c) motion for judgment on the pleadings. However, a court applies the same standards to such a motion that are applied to motions timely filed under Rule 12(b)(6).

*Puckett v. United States,* 82 F.Supp.2d 660, 663 (S.D.Tex.1999) (citations omitted); *see Youngblood v. Bender,* 104 F.Supp.2d 618, 619 (E.D.La.2000) (rule 12(b)(6) motions must be filed prior to the answer; rule 12(c) motion for a judgment on the pleadings an appropriate substitute when motion filed after the answer). To the extent the motion is to be considered a motion for summary judgment or a motion for judgment on the pleadings, plaintiff believes it should also be denied.

### Standards of Review

In analyzing a motion for judgment on the pleadings pursuant to rule 12(c) this Court is to:

view the pleading in the light most favorable to, and to draw all reasonable inferences in favor of, the nonmovant. The Court may grant judgment on the pleadings if it appears beyond doubt that the nonmovant can plead or prove no set of facts ... which would entitle him to relief.

*Youngblood,* 104 F.Supp.2d at 619 (quoting *Park Center, Inc. v. Champion Int'l Corp.,* 804 F.Supp. 294, 301 (S.D.Ala.1992)).

On the other hand, a motion for summary judgment should be granted when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A dispute concerning a material fact is considered "genuine" if the evidence "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is not the Court's function to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. 2505. The Court must determine if there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. 2505. Of course, in ruling on a motion for summary judgment, all inferences drawn from the factual record are viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

If the party moving for summary judgment carries its burden of producing evidence which tends to show there is "no genuine issue of material fact, the nonmov-

ant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial." *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir.1996). The nonmoving party may not rely upon mere conclusory allegations to defeat a motion because allegations of that type are not competent summary judgment evidence and are insufficient to defeat a proper motion. *Id.* In fact, if the "nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation," a motion for summary judgment may be granted even in cases "where elusive concepts such as motive or intent are at issue." *Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994) (quoting *Krim v. BancTexas Group,* 989 F.2d 1435, 1449 (5th Cir.1993)).

The party opposing the motion also may not rest on the allegations contained in the pleadings but "must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998). In meeting this requirement, the party must "identify specific evidence in the record" and "articulate the precise manner in which that evidence supports his or her claim." *Id.* Rule 56 of the Federal Rules of Civil Procedure does not impose upon this Court the "duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Id.* (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915–16 & n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992)). A summary judgment will only be precluded by disputed facts which are material, i.e. "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Factual disputes which are irrelevant or unnecessary to the issue will not preclude summary judgment. *Id.*

### Factual Background

As set forth in plaintiff's amended complaint, plaintiff appeared without counsel before the Honorable Janet Littlejohn, Presiding Judge, Bexar County, Texas on October 5, 1998. The matter before that court was a petition for enforcement by contempt in a matter styled *In re Marriage of Susan M. Jones and Calvin Jones,* and assigned cause no. 96–CI–17146. Plaintiff was found in contempt of court and an order was entered which provided in part as follows:

> IT IS ADJUDGED that Respondent, CALVIN JONES, is in contempt for each separate violation enumerated above.

### Contempt

> IT IS ORDERED that punishment is assessed at confinement in the county jail of Bexar County, Texas, for a period of three (3) days or until Respondent has produced the property as previously ordered by the Court.
>
> IT IS FURTHER ORDERED that should Respondent fail to produce the property as previously order [sic] by the Court within three (3) days, Respondent shall thereafter be further confined in the county jail of Bexar County, Texas for a period of 30 days.

Plaintiff states that because of his confinement in jail, he was unable to produce the property as ordered and was therefore subject to confinement for thirty days. According to his calculations, he should have been released on November 8, 1998, but was not released until July 19, 1999, some 253 days beyond his mandatory release date. He was released only after the filing of his second pro se writ of habeas corpus with the Fourth Court of Appeals

who brought his plight to Judge Littlejohn's attention. The order signed by Judge Littlejohn on July 19, 1999, provided as follows:

> On this day Respondent Calvin Jones, pro se, requested release from Bexar County Jail. The Court finds that the Respondent was committed to jail for failure to obey a Court order in the above-entitled and -numbered cause, that Respondent has been in jail for more than 30 days, that the request is proper and that the Respondent Calvin Jones, SID # 659719, should be released from jail.
>
> IT IS ORDERED that Calvin Jones, SID # 659719, be released from the Bexar County Jail based on commitment in this cause and no other commitments upon presentation of a conformed copy of this order.

Plaintiff maintains he made numerous written requests to the jail administration for review and release during his confinement, but his requests were callously ignored by the defendants. Plaintiff also claims his countless verbal requests for review were ignored by the defendants.

*Breach of an Affirmative Statutory Duty*

As set forth in his response to defendants' motion to dismiss/motion for summary judgment (docket # 5), plaintiff denies he is suing Bexar County. As a result, plaintiff claims defendants' sovereign immunity for negligence and intentional torts arguments fail. Likewise, plaintiff denies he is trying to hold Bexar County liable under a respondeat superior or vicarious liability theory. Plaintiff explains he is asserting claims against the defendants individually for a breach of their affirmative, non-delegable duty to ensure that only persons whom they lawfully have the right to incarcerate are confined in the county jail. Plaintiff believes under this duty, the defendants may be held liable for the acts of their subordinates.

Plaintiff argues that defendant Lopez, as keeper of the jail, has a nondelegable duty to ensure that only those persons whom he has the lawful right to incarcerate are confined in the county jail, and defendant Spencer, as the jail administrator, was charged with the duties imposed by law on the sheriff with respect to the jail. Plaintiff cites TEX. LOC. GOV'T CODE ANN. § 351.041, § 351.042 (Vernon 1999), in support of his proposition. Section 351.041 provides as follows:

> (a) The sheriff of each county is the keeper of the county jail. The sheriff shall safely keep all prisoners committed to the jail by a lawful authority, subject to an order of the proper court.
>
> (b) The sheriff may appoint a jailer to operate the jail and meet the needs of the prisoners, but the sheriff shall continue to exercise supervision and control over the jail.

Section 351.042 allows the Commissioners Court of Bexar County to "appoint a jail administrator who shall exercise all power, supervision, and control over the jail, including the duties imposed by law on the sheriff with respect to the jail." Plaintiff argues these provisions support his assertion that the defendants are specifically charged with the duty to ensure that only those whom they have legal authority to incarcerate are confined in the county jail. Thus, a causal connection exists between defendants' action and plaintiff's unlawful nine-month incarceration.

In reply to plaintiff's response, defendants again argue that plaintiff has failed to plead or establish any personal involvement by probative evidence that defendants denied, substantially delayed, or intentionally interfered with the plaintiff's civil rights. Defendants reurge their previous proposition that to establish liability

under section 1983, plaintiff must show personal involvement by the defendants. Defendants argue plaintiff may not hold these defendants liable "solely because LOPEZ is the Sheriff for Bexar County and SPENCER was the Bexar County Jail Administrator." Defendants maintain the plaintiff's primary complaints are the defendants ignored his complaints and failed to investigate and discipline. Moreover, plaintiff's allegations are conclusory.

 Defendants' reply also provides a lengthy discussion concerning absolute immunity from damages and absolute quasi-judicial immunity provided to wardens and law enforcement personnel from confining a prisoner pursuant to a valid order of confinement. However, as plaintiff points out in his response to this reply, he was ordered confined for a maximum period of thirty days, and therefore, there was no facially valid order justifying his confinement after the expiration of his thirty-day sentence. The Court agrees defendants' arguments concerning a valid order of confinement are not applicable under the undisputed factual circumstances alleged by the plaintiff.[2]

Plaintiff continues to maintain that the existence of a specific statutory duty imposed directly upon the defendants to incarcerate only those persons whom they have the lawful right to confine distinguishes this case from cases relied upon by the defendants which require personal involvement by the sheriff or deputy before liability under section 1983 can be imposed. Plaintiff cites to the following trilogy of cases in support of his proposition:

*Douthit v. Jones,* 641 F.2d 345 (5th Cir. 1981)(en banc); *Whirl v. Kern,* 407 F.2d 781 (5th Cir.1969); *McBeath v. Campbell,* 12 S.W.2d 118 (Tex. Comm'n App.1929, holding approved).

In *Whirl v. Kern,* a case analogous to the situation here, the Fifth Circuit Court of Appeals reversed a jury verdict in favor of a sheriff who was accused of "wrongfully overextending to an inmate of his jail the hospitality of his hostelry and the pleasure of his cuisine." *Whirl v. Kern,* 407 F.2d 781, 785 (5th Cir.1969). That action also involved claims for false imprisonment under Texas law and a claim under 42 U.S.C. § 1983 for deprivation of civil rights. Although the indictments against Mr. Whirl were dismissed, the minutes of the court recited the dismissal of the indictments, and a list of dismissals was sent to the Sheriff's office, the Sheriff testified that he was not apprised of these proceedings and as a result, Mr. Whirl "languished in jail for almost nine months after all charges against him were dismissed." *Id.* at 785. The court noted that judicial immunity was not a point of contention in the appeal because the sheriff was not acting pursuant to any court order or certificate of commitment in keeping Mr. Whirl beyond the date when the charges against him were dismissed, and Mr. Whirl's discharge would have required "no exercise of Kern's discretion or judgment." *Id.* at 786 n. 4. Additionally, the court noted that cases providing immunity to "prison officials acting under court orders valid on

**2.** Plaintiff notes that in defendants' answer filed in state court prior to removal, defendants failed to deny any of plaintiff's allegations either by a general denial provided for in TEX. R. CIV. P. 92 or by denying his specific allegations. Under federal practice, the failure to deny plaintiff's averments operates as an admission pursuant to FED. R. CIV. P. 8(d). Because the factual averments

were not denied, defendants have admitted plaintiff was unlawfully detained some 253 days beyond the mandatory release date in the order by which he was originally confined. Defendants also admitted plaintiff made numerous requests to them for review of his detention and for his release but ignored them.

their face" were inapplicable in this situation. *Id.*

Mr. Whirl contended on appeal, that neither his common law claim of false imprisonment nor his Civil Rights Act claim requires the jailer have "actual knowledge that his prisoner's incarceration is contrary to law." *Id.* at 789. Whirl argued that the good faith of the jailer "is neither a defense to nor a justification for an unlawful restraint." *Id.* Based on the court's reading of two Supreme Court cases, *Monroe v. Pape*, and *Pierson v. Ray*, the court found "neither good faith nor non-negligence [could] exculpate Kern from liability." *Id.* at 790. In reaching this decision, the court explained:

> In ascertaining whether the Supreme Court intended the defense of "good faith" to apply to false imprisonment as well as to false arrest, we must not allow a superficial similarity between essentially different causes of action to dictate the purpose which the good faith defense is meant to serve in the context of the Civil Rights Act. There can be no quarrel with the fact that "good faith" in the circumstances of an arrest is a necessary and historically validated defense. As said by the Supreme Court in Pierson, "A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does."

*Id.* However, the court went on to explain that the breadth of the privilege given to a peace officer in making an arrest is not necessarily the same breadth given to a jailer.

> There is no privilege in a jailer to keep a prisoner in jail beyond the period of his lawful sentence. While a jailer cannot be held liable for errors in a warrant of commitment fair and valid on its face, it is also the law that where a prisoner is held in jail without a court order or written mittimus, the jailer is liable for false imprisonment. The fact that the jailer is without personal knowledge that the prisoner is held unlawfully does not constitute a defense to an action for false imprisonment. In fact, "An illegal imprisonment must be treated as a wrong from its very inception, and it matters not on what date knowledge of such illegality is acquired."

*Id.* at 791 (citations omitted). The court went on to find that a good faith defense should not be available to a jailer in the circumstances presented. The court explained:

> The responsibility for a failure of communication between the courts and the jailhouse cannot justifiably be placed on the head of a man immured in a lockup when the action of the court has become a matter of public record. Ignorance and alibis by a jailer should not vitiate the rights of a man entitled to his freedom. A jailer, unlike a policeman, acts at his leisure. He is not subject to the stresses and split second decisions of an arresting officer, and his acts in discharging a prisoner are purely ministerial. Moreover, unlike his prisoner, the jailer has the means, the freedom, and the duty to make necessary inquiries. While not a surety for the legal correctness of a prisoner's commitment, he is most certainly under an obligation, often statutory, to carry out the functions of his office. Those functions include not only the duty to protect a prisoner, but also the duty to effect his timely release.
> Failure to know of a court proceeding terminating all charges against one held in custody is not, as a matter of law, adequate legal justification for an unauthorized restraint. Were the law otherwise, Whirl's nine months could easily be nine years, and those nine years,

ninety-nine years, and still as a matter of law no redress would follow. The law does not hold the value of a man's freedom in such low regard.

*Id.* at 792. However, the court also recognized that a sheriff must be offered some protection as well. *Id.* The court found a sheriff did not breach his duty to a prisoner until the "expiration of a reasonable time for the proper ascertainment of the authority upon which his prisoner is detained." *Id.* This finding was not to be interpreted as holding that "a sheriff commits an instant tort at the moment when his prisoner should have been released." *Id.* The determination of what is or is not a reasonable time was not before the court. The court explained that it could "safely be said that Kern's ignorance for nine long months after the termination of all proceedings against Whirl was, as a matter of law, ignorance for an unreasonable time." *Id.*

Turning to Whirl's state law claim for false imprisonment, the court noted that Texas courts traditionally have shown "considerable solicitude for the rights of persons wrongfully restrained of their liberty." *Id.* at 793–94. In analyzing this issue, the court relied on the opinion issued in *McBeath v. Campbell,* 12 S.W.2d 118 (Tex. Comm'n App.1929, holding approved), which held that a sheriff was liable "in false imprisonment for failing to know the authority upon which his prisoner was held in county jail," even though he was not liable for the false arrest initiated by his deputy. *Id.* at 794. Relying on Article 5116 of the Texas Civil Statutes, the same language relied on by plaintiff herein but now found at section 351.041 of the Local Government Code, the court found that Sheriff Kern was charged with the same statutory duty to investigate as was the defendant in the *McBeath* case. The following discussion is instructive:

> Conjoined with the statutory duty of a sheriff to protect his prisoners is the statutory duty to make investigation of the authority upon which they are held. Nothing is said in the statutes or in the Texas cases about a good faith defense or a defense of non-negligence to a suit for unlawful incarceration. Good faith may clear the conscience, but it does not redeem or purge the act. Kern reads Article 5116 of the Texas Civil Statutes as if he had no duty to determine the authority upon which his prisoner was held. But the duty to release is absolute if no such authority exists, and such duty cannot be conditioned on notice, solicitation, ignorance or blindness. Ignorance of the law is traditionally no excuse, even when a man's own liberty is at stake. Should it be a defense for officers of the law whose sworn duty it is to protect the liberty of others? Are a sheriff's statutory obligations to be effective only when he acts in willful disobedience of his official responsibilities? The evidence is undisputed that Kern could have known of the dismissal of charges against Whirl had he only made inquiry. But inquiry he did not make, and as a consequence Whirl, quasi-literate and one legged, languished in jail for nine months after he was entitled to be free of his fetters. Unfortunately, non-malicious restraint is no sweeter than restraint evilly motivated, and we cannot sanction chains without legal justification even if they be forged by the hand of an angel. Neither the sheriff's tears of regret nor explanations keyed the lock to unmanacle Whirl. Though we apply all the benign adjectives in our lexicon to Kern's watchmanship—these do not make Whirl a November to July free man.

> As we understand the Texas law of false imprisonment, read in conjunction with the statutory duties of the sheriff as keeper of the county jail, non-negligence is no modifier of liability. Sheriff Kern

had an unyielding duty to know his prisoner's sentence time, and this duty was not discharged.

*Id.* at 794–95.

As do the defendants in this case, Sheriff Kern argued that he could not be liable for the unauthorized detention because he had no personal knowledge of Mr. Whirl's confinement, and a sheriff, under Texas law, is only liable for the unauthorized acts of his deputies if he in some way ratifies them. *Id.* at 795. The court responded to this argument as follows:

> Accepting as we must Kern's uncontradicted statement that he was ignorant of Whirl's presence in the county jail, we are nonetheless of the opinion that the principle of law cited to us by appellees is not apposite to the case at bar. The cases to which we are referred deal with such matters as false arrests, illegal searches and seizures, and the acts of brutality committed by deputy sheriffs without the knowledge or ratification of the sheriff himself. These cases turn on the applicability of Tex.Rev.Civ. Stat. Ann. Art. 6870 (1960) which provides:
>
> > "Sheriffs shall be responsible for the official acts of their deputies, and they shall have power to require from their deputies bond and security; and they shall have the same remedies against their deputies and sureties as any person can have against a sheriff and his sureties."
>
> The applicability of this statute to instances of unauthorized prison detention was considered and rejected in *McBeath v. Campbell,* supra. That case indicated that inasmuch as Article 5116, places the responsibility for the county jail directly upon the county sheriff, he is charged as a matter of law with the responsibility for unlawful detentions. This statutory obligation cannot be avoided by delegating authority over the jail to deputies or other subordinates. Article 5116 says

quite explicitly that the sheriff shall "exercise a supervision and control over the jail." We do not think it is possible for the sheriff to discharge his supervisory duties and also to remain ignorant for a protracted period of a prisoner's very presence in his jail. Nor do we think that the court in McBeath intended the sheriff to have a duty to investigate the authority under which a prisoner is held, but not to have the duty to ascertain whether there is a prisoner to be investigated. The one responsibility necessarily implies the other. In point of fact, the case at bar involves no issue of ratification and no unlawful acts by the sheriff's deputies. The sheriff's responsibilities over the jail do not arise out of the acts of his agents, but have a direct statutory derivation. The statute gives the sheriff the duty to ascertain the authority upon which a prisoner is confined. The failure to make such a determination is his act and his act alone.

*Id.* at 795–96.

Following the decision in *Whirl,* the Fifth Circuit granted an en banc hearing in a later case to "reconsider the issue of good faith defenses in § 1983 actions based on false imprisonment." *Bryan v. Jones,* 530 F.2d 1210, 1211 (5th Cir.1976). Despite receiving notices from the clerk of the criminal district court that Mr. Bryan's case had been disposed of and he was to be released, Mr. Bryan was not released because of a typographical error which reflected that Mr. Bryan was being held on authority of a warrant which had not been disposed of. Although Mr. Bryan should have been released on March 6, 1972, he was not released until April 7, 1972, after he made several inquiries as to why he was still being held and his records were corrected. After the trial court granted judgment on the verdict of $40,000 against the sheriff, Sheriff Jones appealed claiming it was error for the court not to instruct the jury that "good faith was a defense to the

charge of false imprisonment." *Id.* at 1212.

In reversing and remanding the case for a new trial, the court found that the failure to give the requested good faith instruction was error. The court revisited its previous *Whirl* holding that "[j]ailers, unlike policemen, were held not to be immune because their jobs are ministerial in nature and do not present the split second decisions of an arresting officer." *Id.* at 1213. The court noted that their previous decisions as well as several Supreme Court decisions on official immunity had "cast considerable doubt on the wisdom or continued vitality of that decision." *Id.* After surveying the Supreme Court decisions and more recent Fifth Circuit decisions discussing qualified immunity, the court concluded:

> The rule of law to which these cases point-that a defense of official immunity is available to a jailer who has acted in reasonable good faith-is consistent with the Supreme Court pronouncements on official immunity during this period. Attempts by appellee and the original panel to distinguish the Supreme Court cases on grounds that they involved discretionary acts must fail, especially in light of the Supreme Court's decision in

*O'Connor v. Donaldson* [422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975)], a case involving a cause of action that is quite similar to false imprisonment. This is not to say, however, that discretion is irrelevant. To the contrary, we ruled in *Roberts v. Williams,* 456 F.2d 819, 830–31 (5th Cir.1972) ... that the degree of discretion is relevant to determining what standard of reasonableness will be used.

> In a case such as this one, where there is no discretion and relatively little time pressure, the jailer will be held to a high level of reasonableness as to his own actions. If he negligently establishes a record keeping system in which errors of this kind are likely, he will be held liable. But if the errors take place outside of his realm of responsibility, he cannot be found liable because he has acted reasonably and in good faith. Instructions outlining these requirements for a reasonable, good faith defense should have been given in this case, in light of defendant's timely request for such an instruction.

*Id.* at 1214–15. The majority opinion in *Bryan,* however, was not unanimous with several concurring and dissenting opinions being offered for consideration.[3] Approxi-

---

**3.** Chief Judge John R. Brown concurred fully in the result and in Judge Morgan's opinion but provided several observations:

> I believe it is experience, not just the fortuitous contemporary development of qualified immunity under § 1983, that should lead us to today's determination that the holding in *Whirl v. Kern,* that there is no defense of good faith in its sweeping literal categorical form cannot stand unmodified.

*Id.* at 1215. He further recognized that the job of sheriff today has greatly expanded from the "gun-bearing, star-wearing Pat Garrett personally chasing down Billy the Kid." *Id.* In today's world a sheriff cannot possibly do everything.

> There is not enough time, nor enough physical energy in one man, to make daily personal rounds to each Court, the prosecu-

tor's office, the grand jury and jail cells. He must have helpers and once he has established—which he must—a system which eliminates the hazard of mistakes to the maximum reasonable extent, he must depend on the helpers. The law must in some way take that into account.

> Since there is the necessity to delegate power and responsibility for the system to function, the Sheriff must have the right to depend upon the inquiries, judgment and reports and frequently actions of subordinates. That makes it essential that the ultimate administrator be able to establish that he had a reasonable basis for his actions and that he acted in good faith, even in depending upon reports or actions that may turn out to be in error.

I emphasize that this is reasonable good faith. Inescapably what is good faith is a question of fact for each case. But there are strong indicators to help the decision-makers. The Court must consider the kind of responsibility of the official. One of the critical elements is that the official demonstrate that he has employed efficient management principles so as to minimize the chance of error and maximize the likelihood of full satisfaction of constitutional and statutory obligations.

If the sheriff of a metropolitan jail, such as Dallas County or Harris County, does not set up an adequate system so that on successive layers of responsibility each person knows exactly what has happened to orders of the Court discharging prisoners, he could not possibly prove good faith. On the other hand, if he sets up a system that is reasonably watertight, that makes the functionaries check all sources of possible releases of prisoners, and a system for collecting this information and transferring it to the supervisors, and despite the good system and the conscientious performance of duty on the part of everyone concerned, a mistake occurs, clearly that is enough to allow the trier-of-fact to conclude that the sheriff's continued detention was in good faith.

*Id.* at 1216–17 (citations omitted). Interestingly, Chief Judge Brown did not read the majority opinion as "dispensing with all of the wisdom of Whirl." *Id.* at 1215 n. 1. His disagreement was with the following: "Failure to know of a court proceeding terminating all charges against one held in custody is not, as a matter of law, adequate legal justification for an unauthorized restraint," and the "categorical rejection of the good faith defense." *Id.* He also did not construe the opinion as absolving the sheriff of liability

simply because his subordinates did it. This is not a question of respondeat superior. I am assuming that for false imprisonment the man who has command over the body of the prisoner bears the full responsibility for all of his subordinates' actions or nonactions. But, with respect to the onerous and substantial burdens put on the gaol-keeper [gaol is the British spelling for jail] and the attendant liability which flows from the nature of his restraint over people, when it comes to testing his liability he has to have good faith immunity. Judge Wisdom and the majority are in agreement with that.

*Id.* at 1216 n. 2.

Circuit Judges Gewin and Thornberry provided the following concurrence:

I concur in the reasoning and the result of the majority en banc opinion with one exception. I do not approve the criticism of our opinion in *Whirl v. Kern.* In my judgment that case is distinguishable, factually, procedurally and substantively from the case sub judice.

*Id.* at 1217 (citation omitted). On the other hand, in Judge Gee's concurrence he suggested that *Whirl* should be overruled rather than "leave it, like Marley's Ghost, to materialize from time to time on awkward occasions-present in form but eviscerated." *Id.*

Judge Wisdom concurred in part and dissented in part with the decision. He agreed that the reasonable good faith defense should be available in a section 1983 action against a sheriff for false imprisonment. To the extent *Whirl* held a sheriff could be liable even if he is not negligent should be modified or overruled by the *Bryan* opinion. *Id.* at 1217–18. His disagreement was with the result and the fact the opinion went much further than was necessary or wise. He explained:

The Court appears to be attempting to define reasonableness in the context of a sheriff and the individuals in his custody. This attempt is an invitation to trouble. The most significant problem arises in the statement, "But if the errors take place outside of his realm of responsibility, he cannot be found liable because he has acted reasonably and in good faith." This implies that Jones could not be found liable in a new trial, because the error, the preparation of the grand jury report, took place "outside of his realm of responsibility." The question is not, however, where the error took place. The question is whether Jones was negligent in failing to discover the error. If that is not the question, it would be pointless to remand for a new trial on liability. In addition, the Court's statement that the sheriff could be held liable for negligently establishing a record-keeping system should not be interpreted as limiting liability to such negligence. Any negligence proximately causing the illegal detention of an individual would suffice.

*Id.* at 1218.

Finally, the dissent by Circuit Judges Clark, Goldberg, and Godbold provided the following analysis:

Until today the narrow rule of *Whirl v. Kern* remained unimpeached by related legal developments in the Supreme Court and this circuit. Yet with the policy reasons under-

girding its principles as compelling and persuasive as the most recent Supreme Court reasoning, the majority rejects Whirl's precedent and casts it adrift to become a derelict in the law. Today's en banc majority feels it necessary to engraft a "reasonable good faith" defense onto this § 1983 false imprisonment action. This procedure serves only to unsettle settled law and to award the defendant a second trial on the same evidence under a rule of law functionally indistinguishable from that which a properly instructed jury has already applied in this case.

At common law, a jailer's privilege to detain was narrower than that accorded to police officers making an arrest. The policeman could escape liability by asserting that his decision, though mistaken, was made in good faith and with probable cause. No comparable immunity has ever been afforded to one acting as a jailer. To avoid liability, he who kept the gaol was required to follow orders strictly and perform his limited non-discretionary duties promptly and carefully. *Whirl v. Kern* drew heavily upon this common law background. Whirl held that neither good intentions nor non-negligent conduct in general could insulate a jailer from liability. It recognized, however, that this rather rigid general rule did not translate into strict liability in every instance of an illegal imprisonment. A jailer was protected as to his initial incarceration if he justifiably relied on a warrant of commitment valid on its face. Thus, though not in haec verba, Whirl stated that a reasonable good-faith belief that confinement is legal constituted a defense. This type of immunity can be aptly termed derivative because it partakes of the absolute immunity accorded to acts and orders issued by judges in their official capacity. When an initially proper confinement subsequently becomes illegal, Whirl defined the liability equation as more complex. Since a jailer is responsible for the timely release of his prisoners, he must continue to ascertain whether his legal authority to hold his charges remains viable. A total failure to make this inquiry or a failure to correctly update records clearly could result in liability. Whirl said the inaction of a jailer in this regard did not ripen into tortious conduct, however, until after "a reasonable time for the proper ascertainment of the authority upon which his prisoner is detained" has passed. The length of this reasonable grace period could increase or decrease depending on the circumstances of the individual case and the difficulties in transmission of dismissals, discharges, etc. Under Whirl it was theoretically possible for the period to be extended indefinitely if no amount of due diligence could correctly ascertain a prisoner's status or uncover mistakes. To this extent, Whirl established that a reasonable good faith belief based on unavoidable error would be a shield from liability.

Whirl not only provided doctrinal cleanliness, but its narrow privileges were also the most appropriate response to the jailer's predicament and were tailored precisely to fit the prisoner-jailer context.

The Supreme Court has not yet ruled on the scope of a jailer's immunity in a § 1983 false imprisonment case. I respectfully differ with the majority's assertion that its recent pronouncements on official immunity in other contexts have eroded the holding of Whirl in any way.

As the majority readily acknowledges, a jailer's tasks are essentially ministerial and do not call for on-the-spot decision-making. This official does not need the leeway of the policeman who must make a quick, stressful choice between several options.

The post-Whirl decisions of this court provide even less assistance to the majority in its determination to cast Whirl into limbo. The defendants in Dowsey and Johnson attempted to assert "defenses" which were nothing more than excuses based on good intentions or nonmalicious motives. Consistent with the prescriptions of Whirl, rather than contrary to it, I wrote for the court that such subjective "good intentions" claims were not recognized as defenses under the Civil Rights Act. The language in both opinions implying that these defendants, neither of whom acted purely as a jailer, might have succeeded if only their beliefs had been more objectively reasonable was unnecessary to either decision. More importantly, it was never intended to modify the exhaustive analysis made by Whirl of the law applicable to a jailer who failed to release his prisoner when legal restraint authority expired.

In Bryan's case, the factfinders sifted the evidence concerning the erroneous grand jury report, the arrest, warrants, indictments, etc., and concluded that Sheriff "Jones failed to make a reasonable and timely investigation into the legal authority to imprison (the plaintiff) Bryan after March 3, 1972" They did so under the spe-

mately four years later, the Fifth Circuit was again confronted with an action seeking damages against a former Texas sheriff, coincidentally the same sheriff involved in the *Bryan* case, and a deputy sheriff for a wrongful incarceration and the common-law tort of false imprisonment in *Douthit v. Jones*, 619 F.2d 527 (5th Cir.1980).

Troy Douthit brought his action pursuant to § 1983 and the Texas common law tort of false imprisonment against the sheriff and a deputy sheriff of Dallas County for his allegedly wrongful 30–day incarceration. The sheriff and deputy maintained they "believed in good faith based upon reasonable grounds that they had the authority to imprison Douthit to satisfy the court costs that he admittedly owed in cases." *Douthit*, 619 F.2d at 531. The defendants claimed that either the dates on the commitment were typographical errors or another commitment had existed that was now missing. The jury was given an instruction on the good faith, qualified immunity defense but was not told to distinguish in its instructions between the § 1983 claim and the common law claim for false imprisonment. The jury returned a verdict in favor of both defendants. On appeal, Douthit contended the trial court erred in submitting the good faith instruction because a defendant "jailer is entitled to qualified immunity only if he demonstrates either that the plaintiff's confinement resulted from an error made outside the realm of his control or knowledge, or that he lawfully incarcerated the plaintiff on the basis of a facially valid legal order." *Id.*

In order for Douthit to establish his § 1983 cause of action, the court acknowledged that he must show "the defendant sheriff and deputy sheriff imprisoned him in violation of his fourteenth amendment due process rights." *Id.* at 532. The court found Mr. Douthit had asserted a prima facie § 1983 case because "[d]etention of a prisoner thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process," and his allegations concerned his deliberate confinement without a valid commitment order from November 1 through November 30 against his will and over his objection. *Id.* In response, the defendants argued they were entitled to qualified immunity from liability because of their "reasonable, good faith belief that they possessed valid legal authority to incarcerate Douthit for the period in question." *Id.* Defendants relied on the *Bryan v. Jones* decision to support their defense.

Relying on both the *Bryan* and *Whirl* decisions, the court concluded the "discretion that a jailer may lawfully exercise in imprisoning an individual is more limited in scope than even the discretion that a policeman may exercise in effectuating an arrest, much less the discretion accorded to a prison administrator in managing the prison." *Id.* at 535. The court explained:

> Texas Civil Code Ann. art. 5116 imposes a nondelegable duty upon a sheriff to incarcerate in the jail of his county only those individuals committed to his custody "by lawful authority, subject to the order of the proper court." In *Bryan v.*

cific guidelines of Whirl which provided a comprehensible framework for the jury's decision. The majority now undoes this verdict and remand for a new trial with unspecified instructions concerning the availability of a reasonable good-faith defense and indicates that the jailersheriff must be exonerated if the "errors took place outside his realm of responsibility."

Thus, I view the net effect of today's decision as twofold: (1) it gives the defendant jailer an unwarranted new trial on liability rather than damages alone; although this is undesirable, the real harm is (2) the injection of an unnecessary element of confusion into the § 1983 law governing the responsibility of jailers.

*Id.* at 1219–21(citations omitted).

*Jones,* Judge Brown noted in his concurring opinion that the Dallas County Jail, like the jails in other modern metropolitan areas, is a large facility with a daily jail population in excess of 1500 during the time defendant Jones was sheriff. The large number of incarcerated persons about whom he must make decisions, while increasing his administrative burden, does not affect the scope of his narrow discretion to hold or release the individuals in his custody. We hold that to be entitled to qualified immunity from liability for false imprisonment under § 1983, Sheriff Jones and Deputy McCallum must present evidence of objective facts upon which they could have based a good faith, reasonable belief that they had the legal authority to continue to hold Douthit once he had satisfied the sentence imposed upon him in case number 73–5457. The mere statement that they believed in good faith that their actions were lawful will not suffice to establish the defense; they must present objective evidence showing the reasonableness of that belief to warrant submission of the issue of their good faith to the jury.

*Id.* at 535–36 (citations omitted). With respect to Douthit's argument concerning the unavailability of good faith as a defense to his state-law false imprisonment claim, the court wrote:

The Texas courts have clearly held that to prevail against allegations that he falsely imprisoned an individual a sheriff or jailer must show that he acted under lawful authority. Proof that the defendant sheriff acted in good faith, while relevant to the issue of whether the plaintiff can recover punitive damages, will not enable him to avoid liability under Texas common law for the unlawful imprisonment of an individual. Therefore, the district court erred in failing to instruct the jury on Douthit's common law false imprisonment claim

and in granting judgment on that claim to Sheriff Jones and Deputy McCallum based upon the jury's finding that they had acted in good faith. Jones and McCallum could avoid liability only by showing that they had a lawful basis for incarcerating Douthit prior to his confinement, which, as our discussion ... indicates, they failed to do.

*Id.* at 537 (citations omitted). This decision was followed by petitions for rehearing raising for the first time the issue of whether the imposition of liability upon the sheriff for the "allegedly unlawful incarceration of Douthit in November 1973 would contravene our decision in *Baskin v. Parker,* 602 F.2d 1205 (5th Cir.1979)(on rehearing), by holding Sheriff Jones vicariously liable for the acts of his subordinates." *Douthit v. Jones,* 641 F.2d 345, 346 (5th Cir.1981).

In reaching its decision, the court reviewed its previous decision in *Baskin* which had held "that a supervisory official could not be found liable for the unlawful actions of his subordinates under 42 U.S.C. § 1983 on the basis of vicarious liability." *Id.* (referring to *Baskin,* 602 F.2d at 1207–08). *Baskin* required the plaintiff to establish personal involvement or a causal connection between the act of the official and the violation alleged. *Id.* The court also reviewed its previous decisions in *Whirl* and *Bryan,* and provided this explanation:

Construing Whirl and Bryan together, we conclude that art. 5116 imposes a duty upon county sheriffs in Texas to incarcerate only those persons whom he has lawful authority to imprison. A sheriff may satisfy this duty by adopting reasonable internal procedures to ensure that only those persons are incarcerated for whom the sheriff, or the deputy to whom he delegates such responsibilities, has a good faith belief based upon objective circumstances that he possesses valid legal authority to imprison.

*Id.* at 346–47. Because the parties did not address the question of what procedures had been adopted by the sheriff to prevent persons from being falsely imprisoned in the district court, the case was remanded for the resolution of the issue of the sheriff's "liability under § 1983 for Douthit's alleged false imprisonment." *Id.* at 347.

In a later decision, which held that a sheriff and his deputy could not be held vicariously liable for false imprisonment, the Fifth Circuit provided more insight into an alternative basis for holding them directly liable. The court explained the *Whirl* and *Douthit* decisions as follows:

> *Whirl*, however, must be read in combination with its later elaboration in *Douthit v. Jones*. In the second *Douthit* opinion, we explained that, "Construing *Whirl* [and a later case] together, we conclude that art. 5116 imposes a duty upon county sheriffs in Texas to incarcerate only those persons whom he has lawful authority to imprison." A sheriff may satisfy this duty by adopting reasonable internal procedures to ensure that only those persons are incarcerated for whom the sheriff, or the deputy to whom he delegates such responsibilities, has a good faith belief based upon objective circumstances that he possesses valid legal authority to imprison.
>
> This language, and particularly its reference to the sheriff's "good faith belief" may at first seem difficult to reconcile with our statements about Texas law in *Whirl*. In passages already quoted more fully above, we said that "non-negligence is no modifier of the sheriff's liability," and that "we cannot sanction chains without legal justification even if they be forged by the hand of an angel." The key to interpreting these apparently incongruous statements lies in *Douthit's*

reference to "objective circumstances," and in *Whirl's* reference to "legal justification." As *Whirl* made clear, in its explanation of the early Texas *McBeath* decision, the duty imposed by art. 5116 is a duty to investigate. *Douthit* clarifies this duty by indicating that the investigation must yield "objective circumstances" justifying a good faith belief that there exists lawful authority to incarcerate the prisoner. It is not enough that the sheriff investigates, and has a "good faith" belief at the end of the investigation. Nor is it enough that the sheriff can find some excuse for his failure to investigate. In these senses, as *Whirl* put it, non-negligence is no modifier of the sheriff's liability, and the law will not sanction unjustified chains forged by the hand of an angel.

*Brown v. Byer*, 870 F.2d 975, 980–81 (5th Cir.1989) (citations omitted). Unfortunately for Mr. Brown, he did not allege the non-delegable duty plaintiff urges this Court to impose upon the defendants here. Defendants have not responded to any of plaintiff's cited authority but steadfastly assert the defense of qualified immunity.

### Qualified Immunity

Defendants raise for the first time in their Supplemental Motion to Dismiss and/or Motion for Summary Judgment the defense of official or qualified immunity. Contemporaneously with this filing, defendants submitted their Supplemental Answer invoking the doctrine of qualified immunity as a defense to plaintiff's claims. Plaintiff responds that because defendants waited some three and one-half months after filing their original answer before asserting their qualified immunity defense, it is waived.[4] In reply, defendants contend plaintiff did not designate in his original

---

4. Plaintiff points out that defendants did not assert the qualified immunity defense in their first motion to dismiss and/or within the time frame set forth in the Western District of Texas Local Rule CV–12.

petition whether plaintiff was suing the defendants in their official or individual capacities or both, and plaintiff was put on notice of the immunity defense when defendants claimed Texas Tort Claims Act immunity and governmental immunity in their original answer. Defendants also maintain plaintiff cannot claim surprise or prejudice because they asserted this defense in their motion for protective order and their supplemental motion to dismiss. Plaintiff maintains that even if his original petition was not specific enough to overcome the assertion of qualified immunity, the remedy is not dismissal of his suit but he should be given the opportunity to file a reply pursuant to Rule 7(a) of the Federal Rules of Civil Procedure. Irrespective of whether his complaint is factually sufficient to overcome the plea of qualified immunity, plaintiff believes defendants are not entitled to qualified immunity here because as set forth in *Douthit*, they must present evidence of objective facts upon which they could have based a good faith, reasonable belief that they had the legal authority to continue to hold a prisoner once he had satisfied the sentence imposed upon him. *Douthit*, 619 F.2d at 535–36. *Douthit* noted that without any evidence of a facially valid commitment, the trial court was not warranted in even submitting the immunity defense to the jury. *Id.* at 537.

■ The defense of qualified immunity recognized in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), is a product of the genius of the common law. It is neither a complete barrier to recovery nor a true affirmative defense. Rather, its invocation serves to shift the burdens of pleading and proof in federal civil rights lawsuits brought against public officials for actions or omissions attending their performance of official duties.

■ The shifting of the burden of proof for qualified immunity is described, for all purposes including motions for summary judgment, as follows:

> The defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority. Once the defendant has done so, the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law.

*Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir.2001)(quoting *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir.1992)); *Thompson v. Upshur County*, 245 F.3d 447, 456 (5th Cir.2001). Here, defendants have raised qualified immunity as a defense but have not pleaded good faith or established they were acting within the scope of their discretionary authority. Rather, defendants cite the Court to authority which requires highly fact-specific pleading for a plaintiff to overcome a claim of *Harlow* qualified immunity and claim plaintiff has only made general allegations none of which indicate the defendants violated any "clearly established statutory or constitutional rights of which a reasonable person would have known."

■ Texas common law defines discretionary actions as those that "require personal deliberation, decision, and judgment." *Ramirez v. Harris*, No. 05–97–01683–CV, 2000 WL 968243 at *2 (Tex. App.-Dallas, July 14, 2000)(citing *Victory v. Faradineh*, 993 S.W.2d 778, 780 (Tex. App.-Dallas 1999, no pet.)). Action requiring obedience to orders, on the other hand, or the "performance of duties about which the actor has no choice are ministerial." *Id.; see Copeland v. Boone*, 866 S.W.2d 55, 57 (Tex.App.-San Antonio, 1993, writ dism'd w.o.j.)(to establish affirmative defense of official immunity "acts must be 'quasi-judicial' or discretionary in character requiring personal deliberation, deci-

sion and judgment rather than ministerial acts requiring only obedience to orders"). Here, no evidence has been presented that the failure to release Mr. Jones following his 30–day confinement was discretionary on the part of the defendants. *See* TEX. LOC. GOV'T CODE ANN. § 351.041(a)("sheriff shall safely keep all prisoners *committed to the jail by a lawful authority*") (emphasis added). Therefore, it appears defendants have failed to meet one of the elements necessary to their defense of qualified immunity.[5] In the alternative, even if the nondelegable duty at issue here is considered discretionary, defendants' supplemental motion to dismiss and/or for summary judgment still fails.

⬛ A bifurcated analysis is used in assessing a claim of qualified immunity. *Rankin v. Klevenhagen*, 5 F.3d 103, 105 (5th Cir.1993). First, the determination must be made whether the plaintiff has "allege[d] the violation of a clearly established constitutional right," and if he has, the defendants' conduct must be reviewed to determine if same was objectively reasonable. *Id.* (quoting *Siegert v. Gilley*, 500 U.S. 226, 231, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)). Plaintiff has provided the Court with certified copies of the Order for Commitment to County Jail which required his 30–day incarceration and the Order Releasing Respondent from Jail signed July 19, 1999, which states plaintiff was in jail for more than 30 days and should be released. In his first amended complaint, plaintiff refers to these orders and the extra 253 days he had to spend in jail beyond his mandatory release date of November 8, 1998. Plaintiff states he made numerous written and oral requests to the jail administration for review and release but these requests were ignored. Although plaintiff has not provided any evidence to support this allegation, i.e. copies of the written requests, defendants never denied in their answer or by affidavit that those requests were made. Relying on two provisions of the Texas Local Government Code, plaintiff contends his detention beyond the expiration of his sentence absent a facially valid court order or warrant constitutes a deprivation of due process as guaranteed by the Fifth and Fourteenth Amendments of the United States. This is the same contention found valid by the court in *Douthit*.[6]

---

5. The Court is aware of the 1986 decision in *Gagne v. City of Galveston*, 805 F.2d 558 (5th Cir.1986), in which the court discussed the fact that the Supreme Court has never implied "that the immunity defense is lost when an official is engaged in routine tasks." *Id.* at 560. As stated by the Supreme Court in *Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984), "the breach of a ministerial duty 'would forfeit official immunity only if that breach *itself* gave rise to the ... cause of action for damages ... [so that the plaintiff] is entitled to damages *simply* because the regulation was violated.'" *Id.* Here, it seems that the breach of the duty to safely keep all prisoners committed to the jail by a lawful authority provides the basis for the cause of action sued upon.

6. "Detention of a prisoner thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process." *Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980). The court explained:

> Texas Civil Code Ann. art. 5116 imposes a nondelegable duty upon a sheriff to incarcerate in the jail of his county only those individuals committed to his custody "by lawful authority, subject to the order of the proper court." In *Bryan v. Jones*, Judge Brown noted in his concurring opinion that the Dallas County Jail, like the jails in other modern metropolitan areas, is a large facility with a daily jail population in excess of 1500 during the time defendant Jones was sheriff. The large number of incarcerated persons about whom he must make decisions, while increasing his administrative burden, does not affect the scope of his narrow discretion to hold or release the individuals in his custody. We hold that to be entitled to qualified immunity from lia-

Based on the foregoing, the Court finds plaintiff has established the violation of a clearly established constitutional right to liberty absent a lawful order of detention or incarceration. Having fulfilled the first prong of the analysis, the second prong requires a determination of whether "the official's conduct was *objectively* reasonable under clearly established law existing *at the time of the incident.*" *Bazan,* 246 F.3d at 490. Again, based on the authorities discussed, this Court finds the holding of Mr. Jones 253 days beyond his term of confinement was not objectively reasonable in light of the case law on this issue and the nondelegable duty .imposed upon these defendants. Accordingly, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment or in the Alternative Motion to Dismiss (docket # 3) and Defendants' Supplemental Motion to Dismiss and/or Motion for Summary Judgment (docket # 15) are DENIED.

### Motions to Compel and For Leave

In their motion for protective order, defendants seek protection from plaintiff's pretrial discovery because of their assertion of qualified immunity. Defendants contend they received plaintiff's first set of interrogatories and requests for production on January 17, 2001, and have asserted the defense of official or qualified immunity in their original answer. As noted by the plaintiff and supported by the record before this Court, qualified immunity was not raised until the supplemental motion to dismiss and/or motion for summary judgment and supplemental answer were filed February 1, 2001. However, because

the Court has denied defendants' motions based on qualified immunity, IT IS HEREBY ORDERED that Defendants' Motion for Protective Order (docket # 13) is DISMISSED AS MOOT.

Defendants have also filed a motion to ·compel and/or motion for leave seeking to take the plaintiff's deposition and requesting that plaintiff be produced for a deposition within 7 days from the date of the Court's order. Defendants complain plaintiff's counsel has refused to produce the plaintiff for a deposition despite the fact they have sought protection from this Court from answering any of plaintiff's discovery. In response, counsel for the plaintiff states he is willing to produce the plaintiff if defendants produce themselves for a deposition as well. Based on plaintiff's representations of quid pro quo willingness to proceed with depositions and the fact that defendants' motions asserting qualified immunity have been denied and discovery is now open to both parties, the Court finds the motion to compel is moot. Accordingly, IT IS HEREBY ORDERED that Defendant Bexar County Sheriff, Ralph Lopez and Chauncey Spencer's Motion to Compel and/or Motion for Leave (docket # 21) is DENIED as moot subject to reurging should the parties be unable to work out an exchange of depositions.

It is so ORDERED.

bility for false imprisonment under § 1983, Sheriff Jones and Deputy McCallum must present evidence of objective facts upon which they could have based a good faith, reasonable belief that they had the legal authority to continue to hold Douthit once he had satisfied the sentence imposed upon him in case number 73–5457. The mere

statement that they believed in good faith that their actions were lawful will not suffice to establish the defense; they must present objective evidence showing the reasonableness of that belief to warrant submission of the issue of their good faith to the jury.
*Id.* at 535–36 (citations omitted).